Gregg A. Farley (State Bar No. 115593)
Email: gfarley@farleyfirm.com
LAW OFFICES OF GREGG A. FARLEY
880 Apollo Street, Suite 222
El Segundo, California 90245
Telephone: (310) 445-4024
Facsimile: (310) 445-4109

Attorneys for Plaintiff Sergio Galicia Gonzalez

Robert W. Skripko, Jr. (State Bar No. 151226)
Email: rwskripko@skripkolaw.com
LAW OFFICE OF ROBERT W. SKRIPKO, JR., PC
38 Corporate Park
Irvine, California 92606
Telephone: (949) 476-2000
Facsimile: (949) 476-2007

Attorneys for Plaintiffs Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel
Martinez and Agustin Aguilar

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GALICIA GONZALEZ, an individual, appearing on behalf of himself and all others similarly situated, Plaintiff, vs. BMC WEST, LLC, a Delaware limited liability company, Defendant. | Case No.: 5:17-cv-00390-JGB (RAOx) (Consolidated with Case No. 5:17-cv-00571-JGB (RAOx)) **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** Date: May 7, 2018 Time: 9:00 a.m. Ctrm: 1 |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION...................................................   1

II.   SUMMARY OF THE LITIGATION.......................................   2

      A.  Overview And Valuation Of Plaintiffs' Claims...................   3

      1.  Alleged Underpayment of Wages……………...................   3

      2.  Alleged Non-Compliant Meal Breaks……………...............   5

      3.  Alleged Inaccurate Wage Statements...................................   6

      4.  Alleged Waiting Time Penalties……………......................   7

      6.  Duplicative 17200 and PAGA Claims.................................   8

      8.  Summary of Value of Claims...............................................   8

      B.  Overview Of Discovery.....................................................   8

      C.  Settlement Negotiations....................................................   9

III.  THE PROPOSED SETTLEMENT...........................................   9

      A.  Cash Compensation..........................................................   9

      B.  Release Of Claims............................................................   12

      C.  Certification......................................................................   12

      D.  Notice To Class Members.................................................   12

      E.  Notice Of PAGA Settlement…………………………......   13

IV.   THE PROPOSED SETTLEMENT IS FAIR.............................   13

      A.  Strength of Plaintiffs' Case...............................................   14

      B.  The Risk, Expense, Complexity And Duration Of Further
          Litigation And The Risk Of Maintaining Class Action Status....   16

      C.  The Benefits Offered In Settlement....................................   16

      D.  Extent of Discovery And Stage At Which Settlement
          Is Reached.......................................................................   17

      E.  Experience And Views Of Counsel....................................   17

Page

F.  Presence Of Governmental Participants................................ 17

G.  The Proposed Settlement Resulted From Informed

And Non-Collusive Arm's-Length Negotiations........................ 18

V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE

CERTIFIED................................................................ 19

A.  The Settlement Satisfies The Requirements Of Rule 23(a).. 19

1.  Numerosity................................................................ 19

2.  Commonality............................................................ 19

3.  Typicality................................................................ 20

4.  Adequacy................................................................ 21

B.  The Settlement Class Should Be Certified Under

Rule 23(b)(3)............................................................ 21

1.  Common Questions Predominate Over Individual Issues.... 22

2.  A Class Action Is the Superior Method to Settle the

Controversy.............................................................. 22

VI.  THE PROPOSED CLASS NOTICE IS APPROPRIATE......... 24

VII. CONCLUSION........................................................... 25

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                     <u>Page</u>

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP,

       2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................... 18

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)...……....... 22, 24

*Churchill Village, LLC v. General Electric,* 361 F.3d 566 (2004)..... 24

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)................. 23

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................ 24

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982)........................ 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................. 18-24

*Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992)............. 20

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

       216 F.R.D. 197 (D. Me. 2003)................................................. 25

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195

       (5th Cir. 1981)........................................................................ 17

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006).......... 19

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166

       (S.D. Cal. 2007)...................................................................... 13, 15

*In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689,

       2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)...................... 19

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735

       (S.D.N.Y. 1985)....................................................................... 18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

       *Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001).................. 21-22

*Manchaca v. Chater,* 927 F. Supp. 962 (E.D. Tex. 1996)................. 18

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

       221 F.R.D. 523 (C.D. Cal. 2004)............................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page

*Officers of Justice v. Civil Service Com.*, 688 F.2d 615

    (9th Cir. 1982)................................................................. 16

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003)................................ 21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...... 23

*Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009)......... 19-23

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180

    (9th Cir. 2001)................................................................. 23

Statutes, Regulations and Rules

Business and Professions Code § 17200........................................ 8

Labor Code §§ 201-203................................................................. 7

Labor Code § 204........................................................................... 4

Labor Code § 226........................................................................... 6-7

Labor Code § 226.7(a).................................................................... 5-6

Labor Code § 512(a)....................................................................... 5

Labor Code §§ 1194, 1194.2, 1197 and 1197.1............................. 4, 14

Private Attorneys General Act, Labor Code §§ 2698 *et seq*............. 2

28 U.S.C. § 1715............................................................................ 18

Fed. R. Civ. P. 23........................................................................... *passim*

Fed. R. Civ. P. 26(a)(1)................................................................. 9

Industrial Welfare Commission ("IWC") Order Nos. 1, 7, 16........... *passim*

Plaintiffs Sergio Galicia Gonzalez, Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel Martinez and Agustin Aguilar ("Plaintiffs" or "Class Representatives") submit the following memorandum in support of their motion for preliminary approval of the proposed class action settlement in this case.

## I.    INTRODUCTION

This is a proposed wage and hour class action brought by Plaintiffs on behalf of all current and former employees of Defendant BMC West, LLC ("Defendant" or "BMC") who were employed as non-exempt (*i.e.*, hourly-paid) employees at any of Defendant's locations anywhere in California, at any time from November 29, 2012 up to and including January 17, 2018 ("Class Period"). After extensive arms-length negotiations, the parties have reached a proposed class action settlement with a Gross Settlement Amount of $4,550,000. This Gross Settlement Amount of $4.55 million represents approximately 36.73 percent of the estimated potential liability of Defendant. The proposed settlement is memorialized in a Joint Stipulation of Class Action Settlement and Release ("Joint Stipulation" or "Settlement Agreement"). (Farley Decl. Ex. 1).

The proposed settlement class ("Class") consists of approximately 9,358 current and former non-exempt employees (including Plaintiffs) who would be eligible to participate in a claims-made settlement worth $4.55 million. At least fifty percent (50%) of the Net Settlement Amount is guaranteed to be distributed to Valid Claimants. Specifically, (i) Defendant will be obligated to pay a Gross Settlement Amount of up to $4,550,000 depending on the number of Claim Forms submitted; (ii) if the Court approves of certain proposed deductions, a Net Settlement Amount of approximately $3,064,888.72 will be available to distribute to Valid Claimants; and (iii) out of this Net Settlement

Amount, the "average"[1] Class Member who worked 46.16 Work Weeks during the Class Period will be eligible to receive approximately $327.74.

## II.     SUMMARY OF THE LITIGATION

This litigation commenced on November 9, 2016, with the filing of the original Complaint by Plaintiffs Ernesto Jimenez, Luis Pimentel, Jorge Garcia and Miguel Martinez in San Bernardino County Superior Court ("the Jimenez Action").  Thereafter, on January 20, 2017, Plaintiff Sergio Galicia Garcia filed his original Complaint in the Riverside County Superior Court ("the Garcia Action").  Defendant removed the Garcia Action and Jimenez Action to this Court in March 2017.  On January 10, 2018, the Court approved the parties' stipulation to consolidate the Gonzalez and Jimenez Actions ("Consolidated Action") for settlement purposes.  In the Consolidated Action, Plaintiffs are collectively alleging (i) a class action based on the alleged violation of California's wage and hour laws and (iii) a non-class representative action under California's Private Attorneys General Act, Labor Code §§ 2698 *et seq.* ("PAGA").  Under the settlement, the Class Period runs from November 29, 2012 (4 years prior to the initiation of the Jimenez Action) through January 17, 2018 (90 days after the parties' settlement mediation).  (Farley Decl. ¶ 7).

Defendant is in the business of manufacturing and selling building materials and construction services.  As such, it is a member of the Manufacturing Industry, as defined in Section 2(H) of the Industrial Welfare Commission ("IWC") Order No. 1, the Mercantile Industry as defined in Section 2(H) of IWC Order No. 7 and/or the "on-site" Construction Industry, as defined in Section 2(c) of IWC Order No. 16.  During this Class Period,

---

[1] This average was determined by dividing the total of 431,919 Work Weeks worked by all Class Members during the Class Period by the total of 9,358 Class Members (431,919 Work Weeks ÷ 9,358 Class Members = 46.16 Work Weeks per Class Member).  (Farley Decl. ¶ 26 n. 1).

Defendant employed approximately 9,358 Class Members who worked as non-exempt employees engaged in construction services and the manufacturing and sale of building materials in California. (Farley Decl. ¶ 8). Plaintiff Gonzalez worked primarily at Defendant's manufacturing, sales and distribution facility in Indio, California. (Gonzalez Decl. ¶ 2). Meanwhile, other Plaintiffs worked performing construction services throughout Southern California. (Jimenez Decl. ¶ 2; Pimentel Decl. ¶ 2; Garcia Decl. ¶ 2; Martinez Decl. ¶ 2; Aguilar Decl. ¶ 2).

### A.    Overview And Valuation Of Plaintiffs' Claims

The core claims in the Consolidated Action are: (i) that Defendant allegedly failed to pay all minimum, regular and/or overtime wages due Class Members by purportedly paying employees only for their scheduled work hours; (ii) that Defendant allegedly failed to provide legally-compliant meal and rest periods or breaks to Class Members by purportedly failing to provide such breaks or to provide them on an untimely basis; (iii) that Defendant allegedly provided inaccurate statements to Class Members each pay period; and (iv) that Defendant allegedly failed to pay all wages due former employees in the Class at the time of their employment separation. The core claims also include an over-lapping non-class claim for a representative action under PAGA. In Class Counsel's opinion, any other claims do not have significant merit. (Farley Decl. ¶ 9).

During the October 19, 2017 settlement mediation, Plaintiffs and Class Counsel relied on a sampling of wage and hour records and other data produced by Defendant. Based on these records and data, for purposes of the settlement, Class Counsel and their forensic accounting consultant estimate the following realistic potential liability of Defendant. (Farley Decl. ¶ 10).

### 1.    Alleged Underpayment of Wages

As the Court is aware, Labor Code Section 204 generally requires an employer like Defendant in California to pay wages on a timely basis when they are worked or earned.  Labor Code § 204.  Likewise, under Labor Code Sections 1194, 1194.2 and 1197.1, non-exempt California employees who have not been paid the minimum wage are entitled to recover the amount underpaid, certain liquidated damages and other penalties.  Labor Code §§ 1194, 1194.2, 1197.1.  Similarly, non-exempt California employees are also entitled to overtime of one and one-half times the employees' regular rate of pay for hours worked in excess of 8 hours per day or 40 hours per week.  Labor Code § 510; IWC Order Nos. 1, 7, 16 §3.  (Farley Decl. ¶ 11).

California law defines "hours worked" as "the time during which an employee is subject to the *control* of an employer."  IWC Wage Order Nos. 1-2001, 7-2001, § 2(G), 16-2001, § 2(J) (emphasis added).  If an employee is under an employer's control, then the employee must be compensated for that time regardless of whether the employee is doing productive work.  *See Morillion v. Royal Packing Co*., 22 Cal. 4th 575, 583-584 (2000).  "Under California law it is only necessary that the worker be subject to the 'control of the employer' in order to be entitled to compensation."  *Id.* at 584; *see also Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013) (affirming judgment for automotive repair employees who were clocked in but not paid for waiting time between piece-rate work).  (Farley Decl. ¶ 12).

Here, Plaintiffs are alleging that Defendant had a policy or practice of paying Class Members only for the work hours that such employees were scheduled to work, regardless of the time when such employees actually worked or were under Defendant's control.  For example, Defendant's supervisors or managers filled out in advance the work schedules of construction employees and then required each employee to sign "timesheets"

showing the pre-determined work schedules as the employee's actual work times.  In addition, rather than have employees record their actual times when were allegedly provided with meal breaks, the pre-prepared "timesheets" showed the same block of time each work day when employees were allegedly provided with such breaks.  That is, Defendant did not offer such employees the opportunity to record their actual work times or time under Defendant's control.  However, Plaintiffs have used other sources of information, such as Plaintiffs' own handwritten time records and Defendant's electronic driver logs which were programmed to automatically record the work activities of employees, which more reliably recorded the actual work times of such employees and the time when such employees were under Defendant's control.  Analysis of these more reliable sources of information leads to the conclusion that Class Members were routinely underpaid for "hours worked" under California law.  Based on this analysis, Class Counsel estimate that Defendant's realistic exposure for underpayment of wages owed to the Class would be approximately $1,485,922 if this Consolidated Action was tried as a class action.  (Farley Decl. ¶ 13).

### 2.     Alleged Non-Compliant Meal Breaks

Labor Code Sections 226.7(b) and 512(a) and the applicable IWC orders require, with certain exceptions, that an employer like Defendant provide a second 30-minute, un-interrupted meal break anytime an employee works more than five (5) hours during a shift.  Labor Code §§ 226.7(b), 512(a); IWC Order Nos. 1, 7, 16 §§10-11; *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).  More significantly, the applicable IWC wage orders required Defendant to record the various times when employees were provided with meal periods.  Each IWC order mandates: "Every employer . . . shall keep accurate information with respect to . . . [t]ime records showing when the

employee begins and ends each work period.  Meal periods . . . shall also be recorded."  IWC Order Nos. 1, 7, 16, §§6-7.  However, as noted above, Defendant required its employees to sign pre-printed work schedules, labeled "timesheets," which assumed each employee was provided with a meal break at the same time each work day, regardless of the actual break times, if any.  Specifically, Defendant apparently failed to record employee's actual meal break times using a genuine timekeeping system.  Using the same methodology discussed above of comparing such suspect "timesheets" with actual electronic driver logs, Class Counsel and their consultant estimate that, during approximately 3.8 percent of all employee work shifts, employees were provided with meal breaks on an arguably late basis commencing more than five (5) hours after the start of the shifts.  (Farley Decl. ¶¶ 14-15).

Under Labor Code Section 226.7(c) and the applicable IWC orders, an employer like Defendant who fails to provide an employee with a legally-compliant meal break is required to pay one hour of pay at the employee's regular rate of compensation for each workday that such a break was not provided.  Labor Code § 226.7(c).  Using average rates of pay for such employees, Class Counsel estimate based on their consultant's analysis that the realistic potential liability of Defendant for such estimated meal break penalties would be approximately $1,342,377.  (Farley Decl. ¶ 16).

### 3.  Alleged Inaccurate Wage Statements

Labor Code Section 226(a) requires an employer like Defendant to furnish accurate itemized wage statements to employees each pay period.  Given the disputed evidence of underpayment of wages and meal break penalties discussed above, Defendant's wage statements were arguably inaccurate (although Defendant vigorously denies this claim).  Defendant also arguably violated Section 226(a)(8), which requires the correct name of each

employer to appear on the wage statements furnished to employees, by distributing wage statements during the period from August 1, 2016 through January 13, 2017, which contained the incorrect name of Defendant.  Under Section 226(e), an employee suffering "injury as a result of a knowing and intentional failure by an employer" to provide accurate wage statements is entitled to $50 for the initial violation and $100 for each subsequent violation up to $4,000.  Labor Code § 226(a)(e).  Defendant denies that it "knowingly and intentionally" provided inaccurate statements or that such allegedly inaccurate statements resulted in any "injury" to Plaintiff and the Class.  Class Counsel estimate based on their consultant's analysis that the realistic potential exposure of Defendant for the alleged knowing and intentional failure to provide accurate wage statements would be approximately $4,442,580.  (Farley Decl. ¶ 17).

### 4.   Alleged Waiting Time Penalties

Under Labor Code Sections 201 and 202, an employer like Defendant is supposed to pay all wages due and payable to a quitting or terminated employee within certain minimum time periods.  Labor Code Section 203 further provides that "[i]f an employer willfully fails to pay . . . the wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the date thereof at the same rate until paid."  Labor Code §§ 201-203.  If Defendant in fact failed to pay all wages and meal break penalties owed to the Class, as alleged above, this failure would also trigger an arguably "willful" violation of Labor Code Sections 201-203.  Once again, Defendant vigorously denies that it "willfully" failed to pay such wages or that it violated Sections 201-203 and owes any penalty.  Class Counsel estimate that the maximum potential liability of Defendant for the alleged violation of Labor Code Sections 201-203 would be approximately $5,098,007.  (Farley Decl. ¶ 18).

### 5.    Duplicative 17200 and PAGA Claims

Plaintiff's claims for violation of Business and Professions Code Section 17200 and PAGA are duplicative of the above-described claims under California's labor laws because the Section 17200 and PAGA claims are premised on the same alleged wage and hour violations.  For this reason, Class Counsel ascribe a nominal $20,000 value to the PAGA claim and a zero dollar value to the Section 17200 claim.  (Farley Decl. ¶ 19).

### 6.    Summary of Value of Claims

In summary, Class Counsel estimate that the realistic potential liability of Defendant during the Class Period is approximately as follows:

| Claim | Potential Liability |
|---|---|
| Meal Break Claim | $1,342,377 |
| Wage Claim | $1,485,922 |
| Inaccurate Wage Statement Claim | $4,442,580 |
| Waiting Time Penalties Claim | $5,098,007 |
| 17200 and PAGA Claims | $20,000 |
| Total: | $12,388,886 |

Thus, Plaintiffs and Class Counsel estimate that Defendant's liability – which Defendant strenuously denies -- is in the approximate range of $12 million. Thus, the gross value of the proposed settlement is approximately 36.73% ($12,388,886 ÷ $4.55 million) of Defendant's potential exposure.  As discussed below in more detail, the Gross Settlement Amount under the proposed settlement is $4,550,000 on a claims-made basis with a guarantee that at least fifty percent (50%) of the Net Settlement Amount will be distributed to Valid Claimants.  (Farley Decl. ¶ 20).

### B.    Overview Of Discovery

The Parties engaged in extensive discovery relating to the claims of the proposed Class and Class Representative.  This discovery included the

following: (i) initial disclosures under Federal Civil Procedure Rule 26(a)(1); (ii) Defendant's responses to Plaintiff Gonzalez's interrogatories; (iii) Defendant's responses to Plaintiff Gonzalez's document requests; (iv) Defendant's production of over 16,000 pages of employee policy, timekeeping and payroll records; (v) Plaintiffs' records; and (vi) the analysis of those records by Class Counsel's expert consultant.  (Farley Decl. ¶ 21).

## C.    Settlement Negotiations

The settlement is the result of extensive, arm's-length negotiations between the Parties.  On October 19, 2017, the Parties participated in a full-day mediation before a respected third-party neutral experienced in the settlement of wage and hour class action, which culminated in an agreement in principle. (Farley Decl. ¶ 22).

## III.   THE PROPOSED SETTLEMENT

## A.    Cash Compensation

The Settlement Agreement provides that Defendant will pay a cash settlement, on a claims made basis, in the Gross Settlement Amount of $4,550,000.  (Sttlmnt § 2.1).  The Agreement further provides that, subject to Court approval, certain deductions may be made out of the Gross Settlement Amount consisting of: (i) a maximum of $1,137,500 in attorneys' fees to Class Counsel (1/4th of the gross settlement amount) plus actual litigation costs and expenses of up to $30,000, subject to proof; (ii) up to $10,000 in an Incentive Payment to each Plaintiff, for a total of $60,000, in recognition of their services to the Class; (iii) an estimated $39,000 to the Administrator, Simpluris, Inc., for the fees and costs of administering the settlement; (iv) $15,000 to the California Labor Workforce and Development Agency ("LWDA") for its share of the recovery allocated to the settlement of PAGA claims; and (v) an estimated $203,611.28 for the employer's share of payroll taxes on the amount of the

Settlement Payment to Valid Claimants.  (Sttlmnt §§ 3.15, 7.3.1.2).  The total of such deductions is estimated to be approximately $1,485,111.28.  If the Court approves of these deductions from the Gross Settlement Amount of $4,550,000, it will leave a Net Settlement Amount of approximately $3,064,888.72 to be distributed to Valid Claimants (*i.e.*, Class Members who do not return timely and valid Request for Exclusion Forms but who submit timely and valid Claim Forms).  Each individual Settlement Payment made to a Valid Claimant will be allocated 33.3% to the settlement of disputed wage claims and 66.7% to the settlement of disputed claims for interest, penalties and liquidated damages.  The settlement also establishes a so-called Settlement Floor under which it is guaranteed that Defendant will pay at least fifty percent (50%) of the Net Settlement Amount to Valid Claimants.  (Sttlmnt §§ 7.3.2, 9.2; Farley Decl. ¶ 23).

Among other things, in the Claim Form, Valid Claimants are asked to (i) confirm their contact information so that settlement checks may be sent to the correct payee and location, (ii) correct, if necessary, the number of Work Weeks attributed to them in the settlement and (iii) affirmatively agree to the settlement.  (Sttlmnt, Ex. B).  As discussed below, to encourage participation in the settlement, the Notice Packet (as defined below) will be mailed in both the Spanish and English languages along with a postage pre-paid return envelope, and after thirty (30) days the Claims Administrator will mail a reminder postcard to all Class Members who have not responded by such date.  (Sttlmnt §§ 8.4.5, 8.4.6).  (Farley Decl. ¶ 24).

To be timely, the Claim Forms must be returned no later than 60 days after the Administrator mails the Notice Packet to the Class.  This deadline is set forth in the Notice and Claim Form.  To be valid, Claim Forms must be completed in full, signed under penalty of perjury, and returned to the

Administrator.  (Sttlmnt § 8.4.5.2).  Valid Claimants are entitled to receive a distribution from the Net Settlement Amount based on a formula set forth in the Settlement Agreement.  Pursuant to this formula, the Net Settlement Amount is, in effect, divided by the number of Work Weeks worked by all Class Members during the Class Period to come up with an amount per individual Work Week that will be paid under the settlement.  This amount per individual Work Week is then multiplied the number of Work Weeks worked by each Valid Claimant during the Class Period to arrive at the amount of the individual Settlement Payment to be paid to each Valid Claimant.  (Sttlmnt § 7.3.1; Farley Decl. ¶ 25).

For example, it is estimated that the total number of Work Weeks worked by all Class Members during the Class Period is approximately 431,919.  If it is assumed that the Net Settlement Amount left after the deductions mentioned above are made is, as stated above, $3,064,888.72, the Net Settlement Amount divided by the total number of Work Weeks for the Class would equal approximately $7.10 per individual Work Week ($3,064,888.72 ÷ 431,919 Work Weeks = $7.10 per Week).  It follows that, under the formula, each Valid Claimant would receive approximately $7.10 per individual Work Week that the Valid Claimant worked during the Class Period.  Consequently, such a Valid Claimant who worked the "average"[2] of 46.16 Work Weeks during the Class Period would receive a distribution from the Net Settlement Amount equal to approximately $327.74 ($7.10 X 46.16 Work Weeks).  (Farley Decl. ¶ 26).

---

[2] As indicated above, the average number of Work Weeks worked by each Class Member is determined by dividing the estimated total number of Work Weeks worked by all Class Members during the Class Period, by the estimated total number of Class Members (431,919 ÷ 9,358 = 46.16 Work Weeks per Class Member).

**B.     Release Of Claims**

In exchange for the above consideration, the settlement will release the claims of Plaintiffs and Class Members (who do not opt out) against Defendant that were or could have been asserted in the action, including known and unknown claims.  (Sttlmnt §§ 3.22, 11).  The scope of this release will be disclosed to the Class in the proposed Notice.  (Sttlmnt, Ex. A).  A Class Member who does not like the scope of the release (or the settlement in general) can submit a written Request for Exclusion Form.  (Sttlmnt § 8.4.4; Farley Decl. ¶ 27).

**C.     Certification**

The parties have agreed to conditional certification of this action for settlement purposes only.  The Class is defined as: "[A]ll present and former persons employed by Defendant and/or the Released Persons in a non-exempt position in California at any time from November 29, 2012 to January 17, 2018."  (Sttlmnt § 3.4).  Thus, the Class Period is defined as the period from November 29, 2012 (*i.e.*, 4 years prior to the initiation of the Jimenez Action) to January 17, 2018 (*i.e.*, 90 days after the October 19, 2017 settlement mediation).  (Sttlmnt § 3.7; Farley Decl. ¶ 28).

**D.     Notice To Class Members**

Within fifteen (15) days after receiving class data from Defendant, the Administrator will distribute by mail the Notice, Claim Form and Request for Exclusion Form (collectively, the "Notice Packet"), to each Class Member.  The Notice Packet will be mailed to each Class Member in both the Spanish and English languages.  Thirty (30) days after the mailing of the Notice Packet, the Administrator will mail a reminder postcard to those Class Members who have not returned Claim Forms or Request for Exclusion Forms by such date.  The proposed Notice, Claim Form and Request for Exclusion Form are attached as

Exhibits A to C to the Settlement Agreement.  The proposed Notice discloses the pendency of the Consolidated Action, summarizes Plaintiffs' claims, defines the Class, describes the consideration Defendant will provide in settlement and the claims that will be released, and explains the Claim Form and Request for Exclusion Form and Class Members' right to object to the settlement.  (Sttlmnt Exs. A-C; Farley Decl. ¶ 29).

### E.     Notice Of PAGA Settlement

Pursuant to Labor Code Section 2699(l)(2), on April 11, 2018, a copy of the Settlement Agreement was submitted to the Labor and Workforce Development Agency at the Agency's website (www.dir.ca.gov/Private-Attorneys-General-Act).  Labor Code § 2699(l)(2).  (Farley Decl. ¶ 30).

### IV.    THE PROPOSED SETTLEMENT IS FAIR

The court in *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1169-1170 (S.D. Cal. 2007), recently summarized the factors to be considered in approving of a class action settlement, as follows:

> "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  When determining whether approval of a settlement is warranted, courts consider "several factors which may include, among others, some or all of the following: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a

governmental participant; and [8] the reaction of the class members to the proposed settlement." *Torrisi*, 8 F.3d at 1375; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Further, "[t]o survive appellate review, the district court must show it has explored comprehensively all [fairness] factors." *Hanlon*, 150 F.3d at 1026 (citing *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)).  Finally, "the settlement may not be the product of collusion among the negotiating parties." *Mego*, 213 F.3d at 458 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

## A.    Strength of Plaintiffs' Case

Plaintiff asserts that Defendant violated various provisions of California's Labor Code and IWC wage orders.  In particular, as described above, Plaintiffs allege  that on a class-wide basis Defendant (i) underpaid minimum, regular and/or overtime wages owed to the Class, in violation of Labor Code Sections 204, 510, 1194, 1194.2 and 1197.1 and the wage orders, by failing to record the actual work times of employees or the time when they were under Defendant's control; (ii) failed to provide legally-compliant meal breaks to the Class, in violation of Labor Code Sections 226.7(b) and 512(a) and the wage orders, by failing to record meal breaks and by providing meal breaks on an untimely basis: (iii) failed to provide accurate and complete wage statements to Class Members, in violation of Labor Code Section 226(a), by failing to pay the proper amount of wages and meal break penalties to the Class and by failing to include the correct employer name on the wage statements during the Class Period; and (iv) failed to pay on a timely basis all final wages due terminated or resigned employees in the Class, in violation of Labor Code Sections 201 to

203, by failing to pay all un-paid wages and meal break penalties owed such employees.

However, Defendant has raised colorable legal and/or factual defenses to these claims by asserting, among other things, that it acted at all times in good faith. As shown above, the bulk of Defendant's potential exposure is for statutory penalties under Section 226(e) and Section 203 – not unpaid wages or meal break penalties which form a much smaller component of the overall damages. Both of these sections contain a *scienter* requirement. Thus, for example, to recover statutory penalties under Section 226(e), Plaintiffs must prove Defendant "knowingly and intentionally" furnished inaccurate wage statements to the Class. Yet, Defendant has a plausible defense that it believed its "timesheets" were accurate because Defendant's practice was to have Class Members sign such "timesheets" acknowledging their accuracy. Likewise, to recover statutory penalties under Section 203, Plaintiffs must prove that Defendant "willfully" failed to pay on a timely basis all wages due terminated or resigned employees in the Class. If Plaintiffs fail to prove such *scienter* requirements, Plaintiffs will not be entitled to recover any statutory penalties and will be left with the much smaller claim for unpaid wages and meal break penalties. (Farley Decl. ¶¶ 17-18).

In deciding whether the settlement is fair, the Court merely has to assess whether the relief offered by the settlement is reasonable in light of the claims to be released. *In re Immune Response*, 497 F.Supp.2d at 1172 ("'[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual

settlements.'") (*citing Officers of Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982)).

**B.    The Risk, Expense, Complexity And Duration Of Further Litigation And The Risk Of Maintaining Class Action Status**

The settlement takes into account the risk, expense, and complexity of further litigation.  If the settlement is not approved, Plaintiffs will need to move for class certification and then prove the merits of their claims at trial.  Based on the evidence discussed above, a significant risk exists that the Court and/or the trier of fact might determine that Plaintiff's claims have no legal or factual merit or that one or more of Defendant's defenses should bar or reduce such claims.  In addition, even if Plaintiffs were to succeed at trial, there is a significant risk that some or all of Plaintiff's recovery for the Class could be reversed on appeal.  Likewise, if Plaintiffs obtained class certification, the Court would still retain authority to de-certify the Consolidated Action in the event the trial showed that common issues did not predominate.

**C.    The Benefits Offered In Settlement**

In the experience of Class Counsel, a cash settlement of $4,550,000, on a claims-made basis, with a 50% Settlement Floor in a wage and hour class action of this size is well within the "ballpark" of what is a fair, reasonable and adequate settlement.  As stated above, Class Members who submit timely and valid Claim Forms, and who worked the average of 46.16 individual Work Weeks during the Class Period, can expect to receive approximately $327.74. (Farley Decl. ¶ 26).  After taking account various other factors -- such as that the Consolidated Action might later be de-certified as a class action, the risk that Plaintiffs might not succeed on the merits at trial or, if Plaintiffs succeed at trial, the risk of reversal on appeal – it becomes apparent that a settlement in this range is fair to the Class.

**D.     Extent Of Discovery And Stage At Which Settlement Is Reached**

This Consolidated Action is approximately 16 months old, and in that time substantial discovery has been conducted, including an extensive analysis of over 16,000 thousand pages of policy, timekeeping and payroll records.  This is more than sufficient discovery on which to determine the fairness of the proposed Settlement.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("'It is true that very little formal discovery was conducted and that there is no voluminous record in the case.  However, the lack of such does not compel the conclusion that insufficient discovery was conducted'") (emphasis omitted).  While Defendant disagrees with Plaintiff's assessment of the documents and information produced, the parties have sufficient information to assess the strengths, weaknesses, and likely expense of taking the cases to trial.  (Farley Decl. ¶ 21).

**E.     Experience And Views Of Counsel**

As set forth in their declarations, Class Counsel are experienced in wage and hour class actions and had sufficient information to assess the strengths and weaknesses of the claims against Defendant, the likelihood of achieving class de-certification opposition and the benefits of the settlement under the circumstances of this Consolidated Action.  *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation.") (citation omitted).

**F.     Presence Of Governmental Participants**

Although there is no governmental entity participating in this matter as of this time (aside from the share of the PAGA settlement to be paid to the LWDA), full and complete notice is being provided to all appropriate state and federal authorities.  Defendant will provide such notice, which will include all

appropriate information and documents required by 28 U.S.C. § 1715(b),
including: (1) the pleadings in the Consolidated Action, (2) the proposed
Settlement Agreement, and (3) Notice to Class Members and benefit election
procedure.  The fact of that notice, and the opportunity governmental entities
will have to take part in the final approval process, weigh in favor of
preliminary approval.

### G.    The Proposed Settlement Resulted From Informed And Non-Collusive Arm's-Length Negotiations

The requirement that a settlement be fair is designed to protect against
collusion among the parties.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
1026 (9th Cir. 1998).  Typically, "[t]here is a presumption of fairness when a
proposed class settlement, which was negotiated at arm's-length by counsel for
the class, is presented for Court approval."  *Newberg on Class Actions*, § 11.41
(4th ed. 2007).

Here, the parties engaged the services of the experienced and skilled
mediator, Jeffrey Krivis, who specializes in wage and hour class actions and
who assisted the parties during their all-day mediation on October 19, 2017.
(Farley Decl. ¶ 22).  Before the mediation, Class Counsel obtained substantial
evidence regarding Defendant's employment policies and practices with respect
to the proposed Class through formal and informal discovery.  (Farley Decl. ¶
21).  Plaintiffs and Class Counsel, who are experienced in prosecuting this type
of wage and hour class action, had "a clear view of the strengths and
weaknesses" of the Consolidated Action and were in a strong position to make
an informed decision regarding the reasonableness of the proposed Settlement.
*See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.
1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

The fact that the settlement was facilitated by an experienced mediator buttresses the conclusion that it was not collusive.  *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.   The Settlement Satisfies The Requirements Of Rule 23(a)

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Plaintiff submits that each requirement is satisfied here.

#### 1.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009).  Here, the numerosity requirement is met because joinder of approximately 9,358 Class Members in a single case would be un-manageable.

#### 2.   Commonality

"The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019; *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006).  The

commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

In this case, there are multiple "common issues" affecting the entire Class and Defendant's alleged wage and hour policies and practices, including whether Defendant paid the correct amount of wages, provided legally-compliant meal breaks, furnished accurate wage statements and paid final wages on a timely basis. Although the Parties dispute whether Defendant's wage and hour policies and practices violated applicable employment law, the liability issues are nonetheless common to the entire Class.

### 3.    Typicality

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably coextensive" with absent class members' claims.  However, they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.  "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* (citation omitted).

Plaintiffs allege that they and other Class Members were exposed to the same allegedly unlawful wage and hour policies and practices of Defendant, all of which Defendant claims were lawful.  Specifically, Plaintiffs allege that Defendant failed to pay all wages due the Class, failed to provide legally-compliant meal breaks, failed to furnish accurate wage statements and failed to pay final wages on a timely basis.  Significantly, Plaintiffs do not allege any claims unique to themselves.  Thus, the requirement of typicality is satisfied.

### 4.     Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy is satisfied where (i) counsel for the class is qualified and competent to prosecute the action vigorously, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class.  *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Wiener*, 225 F.R.D. at 667.

Plaintiffs have retained Class Counsel with substantial experience in prosecuting wage and hour class actions.  (Farley Decl. ¶¶ 2-6; Majarian Decl. ¶¶ 2-3; Skripko Decl. ¶¶ 2-4; Denis Decl. ¶¶ 2-3; Rasi Decl. ¶¶ 2-3).  Likewise, Plaintiffs are members of the proposed Class and have the same interests as the Class in maximizing the recovery from Defendant.  In addition, as already pointed out above, Plaintiffs allege no claim that is unique to themselves or conflicts with the claims of absent Class Members.

### B.     The Settlement Class Should Be Certified Under Rule 23(b)(3)

Plaintiffs request that, for settlement purposes only, the Court certify the proposed Class of current and former non-exempt employees who worked for Defendant in California during the proposed Class Period.  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action."  *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd.*

*of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

### 1.       Common Questions Predominate Over Individual Issues

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Fed Prac. & Proc.*, § 1778; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting commonality and typicality tend to merge).

The predominance requirement is satisfied here.  As discussed above, Plaintiffs allege Class Members are entitled to the same legal remedies based on the same alleged wrongdoing – namely, the alleged violation of state employment laws.  The central issues for every Class Member are whether Defendant paid all wages owed, provided legally-compliant meal breaks, furnished accurate wage statements and paid on a timely basis all final wages due terminated or resigned Class Members. With respect to such claims, there is sufficient basis to find that the requirements of Rule 23(b)(3) are satisfied.  *See Weiner*, 255 F.R.D. at 669; *Hanlon*, 150 F.3d at 1022.

### 2.       A Class Action Is the Superior Method to Settle the Controversy

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include:  (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding superiority requirement may be satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this settlement.  While the amount of potential monetary relief to which an individual class member is significant, it is likely not large enough to make hundreds of individual lawsuits superior to a single class action.  *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671.  It is neither economically feasible, nor judicially efficient, for 9,358 individual Class Members to pursue their individual claims against Defendant on an individual basis.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023.  Moreover, the settlement eliminates any potential difficulties in managing the trial of this Consolidated Action as a class action.  When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## VI.     THE PROPOSED CLASS NOTICE IS APPROPRIATE

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). In the Ninth Circuit, notice of settlement will be adjudged satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (2004) (citation omitted); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).

The proposed Notice of Settlement meet this standard. (Sttlmnt, Ex. A). The Notice is written in simple, straightforward language and includes: (i) basic information about the lawsuit; (ii) a description of the benefits provided by the settlement; (iii) an explanation of how Class Members can obtain settlement benefits; (iv) an explanation of how Class Members can exercise their right to opt-out or object to the settlement; (v) an explanation that the claims against Defendant will be released unless the Class Member opts out; (vi) the names of Class Counsel and information regarding attorneys' fees and expenses and the Plaintiffs' Incentive Payments; and (vii) the date of the Final Fairness and Approval Hearing, among other things.

The Notice provides Class Members with sufficient information to make an informed and intelligent decision about the settlement. As such, the Notice

satisfies the content requirements of Rule 23.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("[N]otice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed dissemination of the Notice Packet to Class Members satisfies all due process requirements.  The Administrator will mail notice to the Class, in both Spanish and English, at the last known addresses for Class Members.  The Claims Administrator will also perform skips and re-mail any Notices which are returned un-delivered.  Furthermore, as mentioned above, the Claims Administrator will mail also mail reminder post-cards to Class Members who do not respond to the Notice within the first thirty (30) days of mailing.  (Sttlmnt § 8.4.6).  In sum, the contents and dissemination of the proposed Notice constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VII.   CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court enter an order:  (i) preliminarily approving the settlement as being fair, reasonable, and adequate; (ii) provisionally certifying the Class under Rule 23 for settlement purposes; (iii) approving the Notice Packet to be disseminated to the Class; (iv) appointing Plaintiffs as Class Representative; (v) appointing Class Counsel; (vi) appointing Simpluris, Inc. as Administrator of the settlement; and (vii) setting the Final Fairness and Approval Hearing to take place approximately five (5) months after preliminary approval.

Dated:  April 11, 2018              LAW OFFICES OF GREGG A. FARLEY

By: _____ */s/Gregg A. Farley* _____