UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-00390 JGB (RAOx)** | Date | May 23, 2018 |
|---|---|---|---|
| Title | ***Sergio Galicia Gonzalez v. BMC West, LLC, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order GRANTING Plaintiffs' Unopposed Motion for Class Certification and Preliminary Approval of Settlement (Dkt. No. 36) (IN CHAMBERS)**


Before the Court is Plaintiffs Sergio Galicia Gonzalez, Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel Martinez, and Agustin Aguilar's (collectively, "Plaintiffs" or "Named Plaintiffs") Motion for Preliminary Approval of Settlement. ("Motion," Dkt. No. 36.) The parties appeared before the Court on May 21, 2018. Upon consideration of the papers filed in support of the motion, as well as oral arguments presented by the parties, the Court GRANTS the Motion.

## I.    PROCEDURAL BACKGROUND

On November 29, 2016, Plaintiffs Jimenez, Pimentel, Garcia, and Martinez filed a class action in the San Bernardino County Superior Court. ("Jimenez Action," Case No. EDCV 14-00571 JGB (RAO) Dkt. No. 1-1.) That case was removed to federal court on March 24, 2017. (Case No. EDCV 14-00571 JGB (RAO) Dkt. No. 1.) On January 18, 2018, the Jimenez Action was consolidated with this case for settlement purposes only. (Dkt. No. 30.) On May 8, 2017, Plaintiffs filed an amended class action complaint against Defendants BMC West Corporation, BMC West, LLC, and BMC-Building Materials & Construction Services (collectively, "Defendants") which contained eight causes of action: (1) violation of Labor Code §§ 226.7(b) and 512(a) for failure to provide legally-complaint meal breaks; (2) violation of Labor Code §§ 226.7(b) for failure to provide legally-compliant rest breaks; (3) violation of Labor Code § 204 for failure to pay wages for all hours worked; (4) violation of Labor Code § 510 for failure to pay overtime wages; (5) violation of Labor Code § 226(a) for failure to furnish legally-complaint wage statements; (6) violation of Labor Code §§ 201–203 for failure to pay final wages on timely basis

| Page 1 of **10** | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk <u>iv</u> |
|---|---|---|

after discharge; (7) violation of Business & Professions Code §§ 17200 *et seq*; and (8) representative action under Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq*. ("FAC," Dkt. No. 16.)

Defendants are in the business of manufacturing and selling building materials and construction services. (Motion at 2.) Plaintiffs bring this class action on behalf of themselves and all current and former employees of Defendant BMC West, LLC ("BMC" or "Defendant") who were employed as hourly-paid employees at BMC's California locations at any time from November 29, 2012 through January 17, 2018 ("Class Period"). (Id. at 1.) Plaintiffs' core claims in this action are that (1) "Defendant allegedly failed to pay all minimum, regular and/or overtime wages due Class Members by purportedly paying employees only for their scheduled work hours"; (2) "Defendant allegedly failed to provide legally-compliant meal and rest periods or breaks to Class Members by purportedly failing to provide such breaks or [by providing] them on an untimely basis"; (3) "Defendant allegedly provided inaccurate statements to Class Members each pay period"; and (4) "Defendant allegedly failed to pay all wages due former employees in the Class at the time of their employment separation." (Id. at 3.)

## II.   LEGAL STANDARD

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Court approval occurs in three steps, the first of which is a preliminary approval hearing. See Manual for Complex Litigation (Fourth) §§ 21.632 (2012). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). A court considers the following factors to determine whether a settlement agreement is potentially fair: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., No. EDCV 13-00398-VAP, 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). See Fed R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See

---

Fed R. Civ. P. 23(a).  Rule 23(b) requires that the class satisfy one of the following requirements: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication.  Fed. R. Civ. P. 23(b).  Courts have added to the federal rules a prerequisite that the class be ascertainable.  In re Northrop Grumman Corp. ERISA Litig., No. cv-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011).

## III.   THE SETTLEMENT AGREEMENT

Plaintiffs submit a copy of the parties' proposed Settlement Agreement as Exhibit 1 to their Motion for Preliminary Approval of Settlement. ("Settlement Agreement," Exh. 1, Dkt. No. 36-3.)  The terms of the Settlement Agreement are discussed below.

### A.  Financial Terms and Releases

In the Settlement Agreement, Defendant continues to deny liability for the claims alleged in the FAC.  (Settlement Agreement at 7.)  Nevertheless, Defendant agrees to pay a total settlement amount of $4,550,000 ("Gross Settlement Amount").  (Id. at 18–19.)  The cost of attorneys' fees, incentive payments to class representatives, costs, the settlement of the Jiminez Action, and expenses of the settlement administrator will all be subtracted from the Gross Settlement Amount.  (Id.)  BMC agrees to pay the Gross Settlement Amount in exchange for "fully and finally settling, disposing and resolving the Consolidated Action (including the Jimenez and Gonzalez Actions) and the dismissal of the Consolidated Action (including the Jimenez and Gonzalez Actions) with prejudice, the Class Representatives' and the Settlement Class Members' waiver and release of the Released Claims, and the other terms and conditions set forth in this Joint Stipulation."  (Id. at 19.)

Plaintiffs request the class representatives each receive an incentive award for $10,000, for a total of $60,000.  (Id. at 20.)  Any portion of the incentive award payment which the Court does not approve will revert to the net settlement amount.  (Id.)  Plaintiffs seek an attorneys' fees award of 25% of the Gross Settlement Amount, which would be $1,137,500.  (Id. at 22–23.) Plaintiffs also seek $30,000 in costs.  (Id. at 36.)  Defendant agreed not to oppose Class Counsel's motion for an award of attorneys' fees and costs.  (Id.)  Plaintiffs ask the Court to approve a $20,000 payment to settle the PAGA claim.  (Id. at 37.)  Of that $20,000, 75% will be paid to the Labor and Workforce Development Agency ("LWDA"), and the remaining $5,000 will be distributed to the Class Members.  (Id.)  If a class member does not join in the settlement or opts out, the settlement payment that he or she would have received will revert to BMC.  (Id. at 23.) However, BMC shall pay no less than 50% of the net settlement amount ("Settlement Floor") to the valid claimants.  (Id.)  If the total amount to be paid to the class members is less than the Settlement Floor, then the difference between the Settlement Floor and the actual amount paid to the class members shall be distributed to the class members in proportion to the amount they were eligible to receive.  (Id. 23–24.)  In their Motion, Plaintiffs seek $39,000 be set aside for the

payment of the Settlement Administrator, Simpluris, Inc. (Motion at 9.)  Thus, the total net settlement amount is approximately $3,064,888.72 ("Net Settlement Amount").  (Id. at 1.)

## B.  Claims Process

The parties have selected Simpluris, Inc. ("Simpluris") to be the settlement administrator.  (Motion at 9.)  Within fifteen days of the entry of the Court's order granting this Motion, BMC shall provide Simpluris with the contact information for each of the class members and all other information needed for Simpluris to calculate each member's eligible payout.  (Settlement Agreement at 26.)  Simpluris will then mail the notice to all the class members via first class mail using the most current address available.  (Id. at 27.)  For notices that are returned, Simpluris will either send the notice to the provided forwarding address or perform a skip trace to locate a more current address.  (Id. at 27–28.)  The notice shall state that a Class Member who wishes to object to the Settlement Agreement must submit either a written statement objecting to the Settlement Agreement or a written notice of intention to appear at the final fairness hearing.  (Id. at 28.)  The notice shall provide that Class Members who wish to receive a payment must timely submit a valid claim form to Simpluris.  (Id. at 29.)

## IV.  CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

The parties seek conditional certification, pursuant to Rule 23, of the settlement class ("Class").  (Motion at 12.)  "The Class is defined as: All present and former persons employed by Defendant and/or the Released Persons in a non-exempt position in California at any time from November 29, 2012 to January 17, 2018."  (Id.)  For the following reasons, the Court will conditionally certify this Class.

## A.  Requirements of Rule 23(a)

### 1.  Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To be impracticable, joinder must be difficult or inconvenient, but it need not be impossible.  Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012).  There is no numerical cutoff for sufficient numerosity, but forty or more members will generally satisfy the numerosity requirement.  Id.

Here, the proposed class encompasses approximately 9,358 individuals.  (Motion at 19.)  The class is therefore sufficiently numerous.

### 2.  Commonality

The commonality requirement is met when the plaintiff's claims "depend upon a common contention… capable of classwide resolution—which means that a determination of its

---

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011). Commonality does not require "that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (emphasis in Abdullah)).

Defendant's employment and wage policies are alleged to have violated state and federal laws. The legal issues surrounding these policies similarly affect all of Defendant's employees during the Class Period. The basic allegation concerns whether Defendant paid the correct amount of wages, provided legally-complaint meal breaks, furnished accurate wage statements, and paid wages on a timely basis. These liability issues are common to the entire Class and answering these questions would resolve a major issue for all the members. Therefore, these common questions of law and fact satisfy the commonality prong.

### 3. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named [p]laintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover N. Am., 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is a permissive standard. Hanlon, 150 F.3d at 1020. The claims of the named plaintiff need not be identical to those of the other class members. Alonzo v. Maximus, Inc., 275 F.R.D. 513, 523 (C.D. Cal. 2011).

Here, the Named Plaintiffs allege that they were exposed to the same allegedly unlawful wage and hour policies as the Class Members. (Motion at 20.) Specifically, Plaintiffs allege that Defendant failed to pay all wages due, failed to provide legally-compliant meal breaks, failed to furnish accurate wage statements, and failed to pay final wages on a timely basis. (Id.) Plaintiffs do not allege any claims unique to themselves. (Id.) This satisfies the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, courts are to inquire (1) whether the proposed class representative and class counsel have any conflicts of interest with the rest of the potential class, and (2) whether the proposed class representative and class counsel will prosecute the action vigorously on behalf of the class as a whole. See Hanlon, 150 F.3d at 1020; Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Here, the class representatives do not allege a unique claim, nor will there be a conflict with the claims of the absent Class Members. (Motion at 21.) These class representatives are members of the Class and have the same interests in maximizing recovery from Defendant. Additionally, Class Counsel is highly qualified with extensive experience in wage and hour

litigation and complex nationwide hybrid actions.  (Id.)  Moreover, the Court is unaware of any information to suggest Class Counsel has any conflict of interest.

### B.  Requirements of Rule 23(b)

Certification is sought pursuant to Rule 23(b)(3).  (Supplement at 20-22.)  Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). First, the Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by a class action.  Hanlon, 150 F.3d at 1022.  A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims.  Id.  That plaintiffs may be owed different amounts of damages is not fatal to the 23(b)(3) prerequisite as long as the individualized damages are a matter of "straightforward accounting."  See In re Facebook, Inc., PPC Adver. Litig., 282 F.R.D. 446, 459 (N.D. Cal. 2012).

Here, the central issues for all the Class Members are whether Defendant paid all wages owed, provided legally-complaint meal breaks, furnished accurate wage statements, and paid on a timely basis.  The resolution of these issues would significantly advance the litigation of these claims.  As such, the questions of law and fact common to the members clearly predominate over any questions which would affect individual members.  Neither class members' interests in individually controlling separate actions, existing litigation, desirability of the forum, nor difficulties in managing a class action weigh against certification.  Class members here lack the resources and incentives to pursue their individual damage amounts.  (Motion at 23.)  Thus, the class action procedural device is superior to individual adjudication.

Accordingly, the Court finds that all the factors have been satisfied, and conditionally certifies the proposed class for purposes of settlement.

### V.  PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement."  Staton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, at *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d at 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

## A.  Extent of Discovery Completed and Stage of the Proceedings.

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, this action is nearly sixteen months old and over 16,000 pages of documents have been exchanged between the parties. (Motion at 17.) Plaintiffs allege this discovery has allowed both sides to ascertain the strengths and weaknesses of their case. (Id.) Additionally, the reached this settlement only after an all-day mediation session on October 19, 2017. (Id. at 18.) Based on the Motion, it appears that each side maintains a clear idea of the strengths and weaknesses of their respective cases, such that the extent of discovery completed and the stage of the proceedings weighs at least somewhat in favor of preliminary approval. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.")

## B.  Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court is to compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

Plaintiffs allege that their total potential maximum recovery for their combined claims would be $12,288,886. (Id. at 8.) The Gross Settlement Amount is $4,550,000. (Id.) Thus, the Gross Settlement Amount is approximately 36.73% of Defendant's potential exposure. (Id.) Additionally, the Settlement Floor ensures that at least 50% of the $3,064,888.72 Net Settlement Amount will be paid to the claimants.

The parties have carefully listed the various objections and defenses Defendant could bring in the absence of a settlement. (Id. at 14–16.) These arguments are seen as risk factors weighing against continuing the litigation and encouraging settlement. (Id.) Defendant denies liability and argue that Plaintiffs will not be able to show Defendant "knowingly and

---

intentionally" furnished inaccurate wage statements to the Class. (Id. at 15.) Likewise, Defendant argues Plaintiff will be unable to show Defendant "willfully" failed to pay wages on a timely basis. (Id.) Upon consideration of the maximum potential liability, the Gross Settlement Amount, the Net Settlement Amount, and the Settlement Floor, the Court finds this factor in favor of settlement.

## C.  Strength of Case and Risk, Expense, Complexity and Likely Duration of Litigation

For the reasons stated above, while Plaintiffs believe they have marshalled enough evidence to prevail on their claims, they acknowledge that Defendant has strong defenses. (Id. at 14–16.) The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. It is apparent Defendant would oppose class certification and conduct further motion practice to defend against Plaintiffs' claims. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of preliminary approval.

## D.  Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, Class Counsel represents "that the Settlement is fair, reasonable, and adequate, and is in the best interests of the Class Members in light of the known circumstances and risks." (Motion at 37.)

Class Counsel has extensive experience serving as counsel in wage-and-hour class actions in federal and state court. (Motion at 17.) Additionally, Class Counsel demonstrates a realistic and balanced view of the potential outcome of the litigation based on the facts of the case and the relative positions of the parties. As a result, the experience and views of Class Counsel also weigh in favor of preliminary approval.

## E.  Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961.)

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. Settlement negotiations occurred under the supervision of an experienced wage-and-hour class action mediator. (Motion at 18.) The use of a mediator experienced in the settlement

process tends to establish that the settlement process was not collusive.  See, e.g., Satchell v. Fed. Ex. Corp., No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  The Court thus turns to the financial terms of the Settlement Agreement.

Plaintiffs request a service award of $10,000 for each of the Named Plaintiffs in this action.  (Motion at 9.)  A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities.  See In re Mego Fin. Corp., 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the Class Representatives).  Here, the Court is concerned the service award is above what is typically sensible.  While the Court does not find this concern dispositive, it cautions Plaintiffs that the award may be reduced at the final approval stage.  Incentive awards of $5,000 are "traditionally considered reasonable in similar jurisdictions."  Elliott v. Rolling Frito-Lay Sales, LP, No. SACV 11-01730-DOC (ANx), 2014 WL 2761316 at *11 (C.D. Cal. June 12, 2014) (collecting cases); see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement).

As for attorneys' fees, Plaintiffs seek 25% of the total gross settlement agreement for attorneys' fees ($1,137,500) plus costs ($30,000.00) for a total of $1,167,500.  (Motion at 9.)  Generally, courts find that a benchmark of twenty-five percent of the common fund is a reasonable fee award.  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  However, at the preliminary approval stage, the Court need only find that the requested attorneys' fees are not the product of apparent collusion.  Graham v. Overland Solutions, Inc., No. 10-CV-0672 BEN BLM, 2012 WL 4009547, at *9 (S.D. Cal. Sept. 12, 2012).  In light of the fact that there is no evidence of impropriety or collusion, and the requested maximum of twenty-five percent is the general benchmark, the Court finds the request for attorneys' fees to be reasonable and weigh in favor of preliminary approval.

## F.  Remaining Factors

In addition to the factors discussed above, the Court may also consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.  Staton, 327 F.3d at 959 (internal citations omitted).  However, in this case, the Court cannot fully analyze the remaining factors.  For example, there is no governmental participant in this action.  Additionally, the Settlement Class has yet to receive notice of the Settlement Agreement, nor have had time to comment or object, preventing consideration of their reaction.

Of the factors considered, however, all weigh in favor of preliminary approval of the Settlement Agreement.  Thus, the Court GRANTS preliminary approval of the proposed Settlement Agreement.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval is GRANTED.


**IT IS SO ORDERED.**