Gregg A. Farley (State Bar No. 115593)
Email: gfarley@farleyfirm.com
LAW OFFICES OF GREGG A. FARLEY
880 Apollo Street, Suite 222
El Segundo, California 90245
Telephone: (310) 445-4024
Facsimile: (310) 445-4109

Attorneys for Plaintiff Sergio Galicia Gonzalez

Robert W. Skripko, Jr. (State Bar No. 151226)
Email: rwskripko@skripkolaw.com
LAW OFFICE OF ROBERT W. SKRIPKO, JR., PC
38 Corporate Park
Irvine, California 92606
Telephone: (949) 476-2000
Facsimile: (949) 476-2007

Attorneys for Plaintiffs Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel Martinez and Agustin Aguilar [Counsel continued on last page below]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GALICIA GONZALEZ, an individual, appearing on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BMC WEST, LLC, a Delaware limited liability company, <br><br> Defendant. | Case No.: 5:17-cv-00390-JGB (RAOx) (Consolidated with Case No. 5:17-cv-00571-JGB (RAOx)) <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR MONETARY AWARDS TO CLASS REPRESENTATIVES, CLASS COUNSEL AND SETTLEMENT ADMINISTRATOR** <br><br> Date: November 19, 2018 <br> Time: 9:00 a.m. <br> Ctrm: 1 |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION.......................................................    1

II.    LEGAL ARGUMENT..............................................    4

    A.  PlaintiffS Seek A Fee Award Under The Percentage-Of-

    Common Fund Methodology.....................................    4

    B.  Benchmark Factors Support A 25 Percent Fee Award.........    6

    1.  Results Achieved.................................................    6

    2.  Risk of Litigation................................................    7

    3.  Skill Required and Quality of Work....................................    8

    4.  Contingent Nature of Fee and Financial Burden.................    9

    6.  Awards Made in Similar Cases............................................    10

    C.  Lodestar Comparison...........................................    11

    D.  The Amount Of Costs Requested Is Reasonable.................    14

    E.  The Court Should Grant Request For A Service Payment

    Of $10,000 To Each Plaintiff........................................    14

    F.   The Court Should Award $99,782 In Administration Costs

    And Expenses to Simpluris……………………………………    16

III.    CONCLUSION.........................................................    17

# **TABLE OF AUTHORITIES**

Cases                                                                          Page

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988).   8

*Betancourt v. Advantage Human Resourcing, Inc.*, 2016

    WL 344532 (Jan. 28, 2016)......................................................   10

*Brawner v. Bank of American National Association*,

    2016 WL 161295 (N.D. Cal. Jan. 14, 2016)...........................   16

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)...............................   15

*Cullen v. Whitman*, 197 F.R.D. 136 (E.D. Pa. 2000)........................   7

*Eddings v. Health Net, Inc.,* 2013 WL 3013867

    (C.D. Cal. June 13, 2013)....................................................   15-16

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997

    (9th Cir. 2002)....................................................................   4

*Garnes v. Barnhardt*, 2006 WL 249522 (N.D. Cal. Jan. 31, 2006)..   14

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862

    (N.D. Cal. 2007).................................................................   11

*Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452 (9th Cir. 2009).....   11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................   12

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)..............................   14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).......................................   6

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)......   5,11

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935

    (9th Cir. 2011)....................................................................   3-4,12

*In re Coordinated Pretrial Proceedings in Petroleum Prods.*

    *Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997)........................   4

*In re Corel Corp. Inc. Secs. Litig.*, 293 F. Supp. 2d 484

    (E.D. Pa. 2003)...................................................................   7

| Cases | Page |
|---|---|
| *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)... | 7,9 |
| *In re Gen. Instr. Secs. Litig.*, 209 F.Supp.2d 423 (E.D. Pa. 2001).... | 8 |
| *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. 2005)..... | 6,8 |
| *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005).................................... | 14 |
| *In re Mfrs. Life Ins.*, 1998 WL 1993385 (S.D. Cal. 1998)............... | 11 |
| *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. 1998)....................................................... | 9 |
| *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...... | 10 |
| *In re Mercury Interactive Corp.*, 618 F.3d 998 (9th Cir. 2010)....... | 4 |
| *In re Public Serv. Co. of New Mexico*, 1992 WL 278452 (S.D. Cal. 1992).................................................... | 8,11 |
| *Kearney v. Hyundai Motor Co.*, 2013 WL 3287996 (C.D. Cal. 2013)......................................................... | 13 |
| *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)....... | 10 |
| *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009)........................................................ | 4,5,6,7,10 |
| *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part*, *rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984).......... | 13 |
| *McCabe v. Six Continents Hotels, Inc.*, 2016 WL 491332 (N.D. Cal. Feb. 8, 2016)............................................ | 16 |
| *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Cal. 2010)........................................................ | 13 |
| *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal. 2008)........................................................ | 13 |
| *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997).................... | 15 |

Cases                                                                          Page

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)..........   15

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841

      (E.D. Cal. 2007).......................................................   11

*Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516

      (D.C. Cir. 1988).......................................................   13

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301

      (9th Cir. 1990).......................................................   4,5

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)........................   12,15

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200

      (C.D. Cal. 2014)....................................................   4,11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482

      (E.D. Cal. 2010)....................................................   5,6,10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............   5,6,7,10,11

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826

      (N.D. Cal. 2011).......................................................   10

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Sergio Galicia Gonzalez, Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel Martinez and Agustin Aguilar ("Plaintiffs" or "Class Representatives") submit the following memorandum in support of their motion for awards of (i) Incentive Payments to Plaintiffs, (ii) attorneys' fees and costs to Class Counsel and (iii) settlement administration costs and expenses to the Administrator of the class action settlement ("Settlement") between Plaintiffs and Defendant BMC West, LLC ("Defendant" or "BMC").

## I.   INTRODUCTION

By this motion, Plaintiffs seek an award from the Court of (i) Incentive Payments to Plaintiffs for their services to the Class in the amount of $10,000 to each Plaintiff; (ii) attorneys' fees payable to Class Counsel collectively, Robert W. Skripko, Jr. of the Law Office of Robert W. Skripko, Jr., PC, Paul J. Denis and Ethan E. Rasi of Denis & Rasi, PC, Gregg A. Farley of the Law Offices of Gregg A. Farley and Sahag Majarian, II, of the Law Offices of Sahag Majarian, in the amount of $1,137,500.00 (25 percent of the Gross Settlement Amount of $4,550,000.00 under the Settlement); (iii) out-of-pocket litigation costs and expenses to Class Counsel collectively in the amount of $22,565.41; and (iv) costs and expenses of claims administration to Simpluris, Inc. ("Simpluris") as Administrator in the amount of $99,782.00.  The reasonableness of the requested awards is shown by the following:

• First, Class Counsel and Plaintiffs achieved a significant result for the Class in this Settlement.  Through their efforts, Plaintiffs achieved a Settlement in the amount of $4,550,000 for a Class consisting of 9,360 Class Members, including 2,456 Valid Claimants who worked 50.37 percent of all Work Weeks. (Kincannon Decl. ¶ 16).

• Second, this is a common fund case in which the Court normally would have the discretion to adopt a lodestar or percentage-of-the-fund method of determining attorneys' fees.  But if the Court elects to use the percentage-of-the-fund method as the starting point for such a determination, Plaintiffs submit that the 25 percent "benchmark" should be considered a fair and reasonable measure of the value of Class Counsel's services rendered to the Class.  As shown in Class Counsel's declarations, the lodestar or reasonable value of Class Counsel's services, at prevailing market rates, is approximately $949,217.50.  Twenty-five percent of the common fund of $4,550,000 translates into a fee award of $1,137,500, which would be just 1.20 times ($1,137,500 ÷ 949,217.50 = 1.20) the lodestar value of Class Counsel's services.  Plaintiffs request a fee award equal to the 25 percent benchmark, as specified in the Settlement, because it would compensate Class Counsel for the risks assumed and skills displayed in this Consolidated Action.  (Farley Decl. ¶¶ 31-36).

• Third, if the Court approves of the requested deductions from the Settlement, the Net Settlement Amount available to be distributed to Class Members is expected to be approximately $3,111,040.75.  The average Settlement Payment to Valid Claimants under the Settlement is therefore estimated by the Administrator to be approximately $637.92, with Valid Claimants who worked the entire Class Period expected to receive approximately $1,908.00.  (Kincannon Decl. ¶ 21).

• Fourth, the requested cost award of $22,565.41 consists of out-of-pocket litigation costs and expenses incurred by Class Counsel and is $7,434.59 less than the $30,000 in litigation costs and expenses authorized by the Settlement.  Moreover, both the requested fee and cost awards are supported by detailed billing and expense records. (Farley Decl. ¶¶ 31-33, 15, Ex. A;

Majarian Decl. ¶¶ 6-8, Ex. A; Skripko Decl. ¶¶ 11-13, Ex. A; Denis Decl. ¶¶ 10-12, Ex. A; Rasi Decl. ¶¶ 10-12, Ex. A).

    •   Fifth, the requested Incentive Payment of $10,000.00 to each Plaintiff is consistent with awards in similar wage and hour settlements and reflects the amount of effort and risk Plaintiffs undertook in prosecuting this Action. It is, moreover, only slightly more than five (5) times greater than the $1,908 which, as mentioned above, each Valid Claimant who worked the entire Class Period would be entitled to receive under the Settlement. (Kincannon Decl. ¶ 21).

## II.   LEGAL ARGUMENT

## A.   Plaintiffs Seek A Fee Award Under The Percentage-Of-Common Fund Methodology

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" of determining the amount of attorneys' fees to award class counsel. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). However, this "discretion must be exercised so as to achieve a reasonable result." *Id.* If, for example, the common fund is so large (*i.e.*, a so-called "megafund") that use of the 25 percent benchmark would result in a windfall for class counsel, then there must be a downward departure from the benchmark, or the benchmark must be replaced entirely by the lodestar method. Conversely, if the common fund is modest in comparison to the effort in attorneys' fees required to obtain it, then the benchmark should be adjusted upward. *See, e.g., Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.");

*In re Bluetooth*, 654 F.3 at 942 (same); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Cal. 2014) ("In 'megafund' cases, fees will commonly be under the benchmark, while in smaller cases -- particularly where the common fund is under $10 million -- awards more frequently exceed the benchmark.").

    This is because it would be an abuse of discretion to use a mechanical formula that leads to an unreasonable award.  *See In re Bluetooth*, 654 F.3 at 944 (holding it is an abuse of discretion when a district court " ' uses a mechanical or formulaic approach that results in an unreasonable reward' "(quoting *In re Mercury Interactive Corp.*, 618 F.3d  998, 992 (9th Cir. 2010)); *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002) ("Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion" (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)).  For that reason, in most common fund cases, the award exceeds the 25 percent benchmark.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367 at * 7 (N.D. Cal. 2009) (In "most common fund cases, the award exceeds that benchmark."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("[n]early all common fund awards range around 30%") .

    "When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required; (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) and *Six (6)Mexican Workers*, 904 F.2d 1301).  Here, although Plaintiffs are providing

the Court with information regarding Class Counsel's lodestar as a "cross-check," Plaintiffs assume that the Court will wish to use the 25 percent benchmark as the starting point for its analysis of the amount of attorneys' fees to be awarded.  Based on results achieved, Plaintiffs request that Class Counsel be awarded fees in the full amount of the 25 percent benchmark -- namely, fees of $1,137,500 out of the Gross Settlement Amount of $4.55 million.  As stated above and discussed below, such an award would represent a modest multiplier of 1.20 times the lodestar value of those fees which is $949,217.50.  (Farley Decl. ¶¶ 31-36; Majarian Decl. ¶¶ 6-8; Skripko Decl. ¶¶ 11-13; Denis Decl. ¶¶ 10-12; Rasi Decl. ¶¶ 10-12).

As discussed below, Plaintiffs believes that the 25 percent benchmark is justified in the Consolidated Action by the factors discussed below, including the skill displayed by Class Counsel in obtaining the Settlement and the lodestar value of Class Counsel's services rendered on behalf of the Class.

### B.    Benchmark Factors Support A 25 Percent Fee Award

As stated above, courts look to some or all of the following six factors in deciding whether deviation from the 25 percent benchmark is appropriate: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required; (iv) the quality of work; (v) the contingent nature of the fee and the financial burden; and (vi) the awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1047; *Vasquez*, 266 F.R.D. at 492.

### 1.    Results Achieved

The "overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Knight*, 2009 WL 248367 at * 5 (N.D. Cal. 2009) (citing *In re Heritage Bond Litig.*, 2005 WL 1594403 at *19 (C.D. Cal. 2005)); *Hensley v. Eckerhard*, 461 U.S. 424, 436 (1983) (holding that the "most critical factor is the degree of success obtained").

Here, Plaintiffs obtained a Settlement with a Gross Settlement Amount of $4.55 million. As reported in Plaintiffs' prelimary and final approval motions, this Gross Settlement Amount represents approximately 36.73 percent of Defendant's potential exposure which Class Counsel estimated at $12,388,886. (Farley Decl. ¶ 20). As such, the Settlement is in the range of settlements that have been held to justify an increased percentage distribution to class counsel. *See, e.g.*, *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320, 323, 326 (E.D.N.Y. 1993) (increasing 25% benchmark to 33.8% where counsel recovered 10% of damages); *In re Gen. Instr. Secs. Litig.*, 209 F.Supp.2d 423, 431, 434 (E.D. Pa. 2001) (awarding one-third fee from $48 million settlement fund that was approximately 11% of the plaintiffs' estimated damages); *In re Corel Corp. Inc. Secs. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (awarding one-third in fees from $7 million settlement fund which represented approximately 15% of class' damages); *Cullen v. Whitman*, 197 F.R.D. 136, 144, 148 (E.D. Pa. 2000) (awarding one-third in fees from settlement representing 17% of total damages). Nevertheless, despite the excellent result, Plaintiffs are not seeking any increase above the 25 percent benchmark.

## 2. Risk of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees." *Knight*, 2009 WL 248367 at *6 (N.D. Cal. 2009) (citing *Vizcaino*, 290 F.3d at 1038). The complexity of Plaintiffs' claims that Defendant allegedly violated multiple provisions of the California Labor Code underscores the risk accepted by Class Counsel in prosecuting this Consolidated Action.

When Class Counsel undertook prosecution of the Consolidated Action, there was no guarantee that Plaintiffs and the Class would succeed on the

merits or achieve a favorable settlement.  This uncertainty and the risks associated with continued litigation support the awarding of a fee in the amount of the 25 percent benchmark.

### 3.  Skill Required and Quality of Work

"[T]he quality of Class Counsel's effort, experience and skill is demonstrated in the exceptional result achieved."  *In re Heritage Bond Litigation*, 2005 WL 1594403 at *19 (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988)).  Here, the quality of Class Counsel's effort, experience and skill is demonstrated by the result achieved, which is a $4.55 million Settlement in a wage and hour case involving over 9,000 Class Members.

The experience of Class Counsel further justifies the fee award requested.  *In re Gen. Instr. Secs. Litig.*, 209 F. Supp. 2d at 432-433 (awarding a fee award of one-third of a common fund based in part on the experience of counsel); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452 at *8 (S.D. Cal. 1992) (finding that experience of counsel favored one-third fee award from common fund).  Class Counsel in this Consolidated Action consist of five (5) Class Counsel who are experienced in wage and hour class actions.  As reflected in their accompanying declarations, Class Counsel collectively have more than 100 years experience.  (Farley Decl. ¶ 2; Majarian Decl. ¶ 2; Skripko Decl. ¶ 2; Denis Decl. ¶ 2; Rasi Decl. ¶ 2).  Mr. Farley alone has practiced law for more than 30 years, has both prosecuted and defended class actions in state and federal court and writes and lectures frequently regarding wage and hour class actions.  (Farley Decl. ¶¶ 2-6).  Likewise, Mr. Skripko, has been an attorney for 28 years and has been appointed as class counsel in numerous wage and hour class actions in state and federal court.  (Skripko Decl. ¶¶ 2-4).

By the same token, Class Counsel invested significant time and resources to achieve the Settlement.  As shown in the detailed itemizations of fees and costs accompanying their declarations, Class Counsel have collectively spent 1,583.55 hours investigating, prosecuting and settling this Consolidated Action.  (Farley Decl. ¶¶ 31-36, Ex. A; Majarian Decl. ¶¶ 6-8, Ex. A; Skripko Decl. ¶¶ 12-13; Ex. A; Denis Decl. ¶¶ 11-12, Ex. A; Rasi Decl. ¶¶ 11-12; Ex. A).

### 4. Contingent Nature of Fee and Financial Burden

Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of class counsel's fee award.  *See, e.g., In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515 at *7 (E.D.N.Y. 1998) (justifying fee award in part due to years spent by counsel in litigation without certainty of compensation); *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. at 326 (same).

In this instance, Class Counsel proceeded entirely on a contingency basis, while paying for all expenses incurred.  As stated above, Class Counsel collectively invested 1,583.55 hours of time, during which time Class Counsel were precluded from working on other matters.  Despite the risk of loss, Class Counsel collectively also advanced $22,565.41 in out-of-pocket expenses. (Farley Decl. ¶¶ 31-36, Ex. A; Majarian Decl. ¶ 8, Ex. A; Skripko Decl. ¶ 13; Ex. A; Denis Decl. ¶ 12, Ex. A; Rasi Decl. ¶ 12, Ex. A).  Awarding less than the 25 percent benchmark of $1,137,500 would mean, in effect, that Class Counsel were not being compensated for the risk of non-payment which they assumed at the beginning of the Consolidated Action.  As the Ninth Circuit observed in *Vizcaino*:

"[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."  [citation omitted].  This mirrors the

established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.

*Vizcaino*, 290 F.3d at 1051 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975)).  Here too, the Court should compensate Class Counsel for the risk of non-payment due to the contingent nature of their representation by awarding at least the amount of the 25 percent benchmark.

### 5.  Awards Made in Similar Cases

Finally, although 25 percent is the recognized benchmark in the Ninth Circuit, numerous Ninth Circuit courts have awarded higher percentages in similar circumstances.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming fee award equal to one-third of total recovery); *Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532 at * 9 (Jan. 28, 2016) (awarding 34.3% of settlement fund in wage and hour class action); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 at *29 (N.D. Cal. 2011) (awarding fees "amount to just under 42% of the settlement amount" in a wage and hour class action); *Vasquez,* 266 F.R.D. at 492 (citing to five recent wage and hour class actions where district courts approved attorneys' fees ranging from 30 to 33⅓%); *Knight*, 2009 WL 248367 at *5-6 (approving of a 30% fee award in a wage and hour class action settlement); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 at *4 (E.D. Cal. 2007) (approving a 33% fee award in a wage and hour class action settlement); *In re Public Ser. Co. of New Mexico*, 1992 WL  278452 at *1 (awarding one-third); *In re Activision Secs. Litig.*, 723 F. Supp. at 1377 (finding "that a figure of approximately 30% is substantially justified"); *Vandeervort*, 8 F.Supp.3d at 1210 (approving 33% award of fees and costs and a 2.52 multiplier).

//

## C.     Lodestar Comparison

In accordance with Ninth Circuit precedent, district courts within the Ninth Circuit have recognized that a lodestar comparison need not be performed where a fee award based on a percentage of the common fund is otherwise reasonable.  *See, e.g., Glass v. UBS Financial Services, Inc.*, 2007 WL 221862 at *15 (N.D. Cal. 2007) (court declined to conduct a lodestar cross-check and approved a request for fees based only on the percentage of recovery method, because it recognized that premising attorney's fees on a lodestar calculation would have unfairly penalized plaintiff's counsel for settling the case without protracted litigation); *In re Mfrs. Life Ins.*, 1998 WL 1993385 at *10 (S.D. Cal. 1998) (court concluded that lodestar analysis was unnecessary and attorneys' fee was reasonable solely on percentage of recovery method).  Nevertheless, the Court has the discretion to use the lodestar method as a "cross-check" to confirm the reasonableness of the fee award based on the percentage-of-common fund approach.  *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) (approving the district court's "informal lodestar cross-check" for confirming the reasonableness of the percentage award); *Vizcaino*, 290 F.3d at 1050 (same).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).  "Though the lodestar figure is 'presumptively reasonable' [citation omitted], the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of the representation, the benefit obtained for the class, the complexity and

novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

As stated above, the requested fee award of $1,137,500 based on one-quarter of the Gross Settlement Amount under the Settlement represents a modest multiplier of 1.20 times Class Counsel's collective lodestar of $949,217.50. Plaintiffs have submitted ample evidence regarding the lodestar value of Class Counsel's services in this Consolidated Action. This evidence takes the form of detailed time-keeping and expense records showing the tasks performed by Class Counsel. (Farley Decl. ¶¶ 32-33, Ex. A; Majarian Decl. ¶ 7, Ex. A; Skripko Decl. ¶¶ 12-13, Ex. A; Denis Decl. ¶¶ 11-12, Ex. A; Rasi Decl. ¶¶ 11-12, Ex. A). The break-down of the lodestar value of Class Counsel's fees by timekeeper is as follows:

| | | |
|---|---|---|
| Robert Skripko | $750 per hr. X 458.40 hrs. = | $343,800.00 |
| Ethan Rasi | $450 per hr. X 303.10 hrs. = | $136,395.00 |
| Paul Denis | $525 per hr. X 372.50 hrs. = | $195,562.50 |
| Gregg A. Farley | $600 per hr. X 412.25 hrs. = | $247,350.00 |
| Sahag Majarian, II | $700 per hr. X 37.30 hrs. = | $26,110.00 |
| | TOTAL = | $949,217.50 |

(Farley Decl. ¶ 36).

As shown above, Class Counsel's applicable hourly rates during the pendency of the Consolidated Action have been: (i) $750 per hour for Robert Skripko, (ii) $450 per hour for Ethan Rasi, (iii) 525 per hour for Paul Denis, (iv) $600 per hour for Gregg A. Farley and (v) $700 per hour for Sahag Majarian, II. These are reasonable rates in line with comparable hourly rates charged by other firms that handle complex litigation in the Central District/Los Angeles market. *See e.g.*, *Kearney v. Hyundai Motor Co.*, 2013

WL 3287996 at *8 (C.D. Cal. 2013) (approving hourly rates between $650 and $800 for class counsel); *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal. 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable in class action).

The reasonableness of Class Counsel's hourly rates is also reinforced by the so-called "*Laffey* Matrix," which is published at www.laffeymatrix.com. The *Laffey* Matrix originated from *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part*, *rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984), *overruled*, *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc).  In *Laffey*, counsel compiled statistics showing the market rates in the District of Columbia for complex federal litigation, eventually resulting in an annual matrix of market fee rates for attorneys at various experience levels.  (Farley Decl. ¶¶ 34-35).

Attached as Exhibit B to the accompanying Declaration of Gregg A. Farley is a copy of the current *Laffey* Matrix as of October 11, 2018.  This matrix shows that during the years when this Consolidated Action was litigated, 2017 to 2019, the market rate for attorneys like Class Counsel with "20+" years of experience was consistently over $800 per hour.  (Farley Decl. ¶¶ 34-35, Ex. B).  Although the *Laffey* Matrix is limited the District of Columbia, some California district courts have nonetheless relied on it and adjusted its rates even higher because of the higher costs of living in Los Angeles and other California cities.  *See, e.g., In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005); *Garnes v. Barnhardt*, 2006 WL 249522 at * 7 (N.D. Cal. Jan. 31, 2006).

//

## D. The Amount Of Costs Requested Is Reasonable

Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiffs is requesting the reimbursement of Class Counsel's out-of-pocket litigation costs and expenses totaling $22,565.41 -- which is $7,434.59 less than the $30,000 in litigation costs and expenses authorized by the Settlement. (Farley Decl. ¶¶ 31-36, Ex. A; Majarian Decl. ¶ 8, Ex. A; Skripko Decl. ¶ 13, Ex. A; Denis Decl. ¶ 12, Ex. A; Rasi Decl. ¶ 12, Ex. A).

Plaintiffs have provided detailed itemizations of these litigation costs and expenses, which reflects that Class Counsel exercised good judgment in incurring such costs and expenses. (Farley Decl. ¶¶ 32-33, Ex. A; Majarian Decl. ¶ 7, Ex. A; Skripko Decl. ¶ 12, Ex. A; Denis Decl. ¶ 12, Ex. A; Rasi Decl. ¶ 12, Ex. A). As these itemizations show, Class Counsel did not incur costs or expenses for frivolous mattes such as first-class air travel in prosecuting this Consolidated Action. Instead, Class Counsel incurred costs and expenses only for matters reasonably necessary to the prosecution. Moreover, it is likely that Class Counsel we will have to incur still further time and costs in the future to complete the administration of this Settlement, for which Class Counsel will not obtain any compensation.

## E. The Court Should Grant Request For A Service Payment Of $10,000 To Each Plaintiff

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

Incentive awards in the amount of $10,000.00 to each Plaintiff are within the range of what is reasonable under the facts and circumstances of this Settlement. Such an award, referred to as an "Incentive Payment" in the Settlement, serves to reward Plaintiffs for the time and effort expended on behalf of the Class and for exposing themselves to the significant risks of litigation. As mentioned above, the Incentive Payment in the amount of $10,000 is just a little more than five (5) times the $1,908 which a Valid Claimant who worked the entire Class Period can expect to receive under the Settlement.

Moreover, Plaintiffs assisted Class Counsel on numerous occasions, by providing documents and information and supporting the settlement mediation and settlement process. (Gonzalez Decl. ¶ 6; Jimenez Decl. ¶¶ 6, 12; Pimentel Decl. ¶¶ 6, 12; Garcia Decl. ¶¶ 6, 12; Martinez Decl. ¶¶ 6, 12; Aguilar Decl. ¶¶ 6, 12). In addition, by lending their names to this Consolidated Action, Plaintiffs have subjected themselves to possible adverse consequences in seeking future employment. Future employers have access to public records, including the Court records in the Consolidated Action, which could be considered by them in deciding whether to hire Plaintiffs. *See Eddings v. Health Net, Inc.,* 2013 WL 3013867 at * 7 (C.D. Cal. June 13, 2013) ("[Plaintiff] also took a significant professional risk by serving as class representative, as her future job prospects may be impaired by her involvement in this case, because she sued her former employer."); *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997); *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998).

Finally, as part of the Settlement, Plaintiffs agreed to provide general releases of any and all claims against Defendant which go far beyond the limited release of wage and hour claims by Settlement Class Members.

(Gonzalez Decl. ¶ 6; Jimenez Decl. ¶ 6; Pimentel Decl. ¶ 6; Garcia Decl. ¶ 6; Martinez Decl. ¶ 6; Aguilar Decl. ¶ 6).  *See Eddings*, 2013 WL 3013867 at *7 (noting as part justification for a $6,000 incentive award that "Plaintiff is executing a general release that will resolve her individual claims, as well as the class claims"); *see also Brawner v. Bank of American National Association*, 2016 WL 161295 at *6 (N.D. Cal. Jan. 14, 2016) (awarding $15,000 incentive award to single class representative in wage and hour class action); *McCabe v. Six Continents Hotels, Inc.*, 2016 WL 491332 at * 2 (N.D. Cal. Feb. 8, 2016) (awarding $10,000 incentive awards to each of two class representatives).

**F.**   **The Court Should Award $99,782 In Administration Costs and Expenses To Simpluris**

Finally, pursuant to the terms of the Settlement, Plaintiffs are requesting approval of the payment of $99,782.00 in settlement administration costs and expenses to the Administrator, Simpluris.  The Declaration of Jeremiah Kincannon, the Administrator's representative, substantiates the services provided by the Administrator and that the figure of $99,782.00 represents the Administrator's costs and expenses of administration, as ultimately charged. (Kincannon Decl. ¶ 22).  The Court previously preliminarily approved, in connection with the prior preliminary approval motion and the Parties' prior stipulations to modify the notice and claims procedure, settlement administrations fees and costs totaling $93,872.66.  The final requested award of $99,782 to Simpluris is only modestly higher than the previously-approved fees and costs of administration.  To encourage participation in the Settlement, Simpluris ended up conducting four (4) separate mailings to the Class.  On June 22, 2018, Simpluris mailed the original Notice Packet consisting of the Court-approved Notice, Claim Form and Request for Exclusion Form.  Subsequently, on July 23, August 1, and September 10, 2018, Simpluris mailed reminder

postcards and notices to the Class.  Simpluris has also processed responses from 2,456 Valid Claimants who returned Claim Forms and from 32 Opt-Out Employees who returned Request for Exclusion Forms.   (Kincannon Decl. ¶¶ 15-16).  Accordingly, Class Counsel believe that the requested administration fees and costs in the amount of $99,782 are reasonable and appropriate given the size of the Class and Settlement and the work required for administration.

## III.   CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court enter a Judgment at the time of the final approval hearing authorizing the awards requested above.

Dated:  October 19, 2018          LAW OFFICES OF GREGG A. FARLEY

By: _____ /s/Gregg A. Farley _____

Gregg A. Farley
Attorneys for Plaintiff Sergio Galicia
Gonzalez, appearing individually and in a
representative capacity

Dated:  October 19, 2018          LAW OFFICE OF ROBERT W. SKRIPKO, JR.

By: _____ /s/Robert W. Skripko _____

Robert W. Skripko
Attorneys for Plaintiffs Ernesto Jimenez, Luis
Pimentel, Jorge Garcia, Miguel Martinez and
Agustin Aguilar, appearing individually and in
a representative capacity

Counsel continued:

Paul J. Denis (State Bar No. 279026)
Email: pdenis@denisrasilaw.com
Ethan E. Rasi (State Bar No. 289848)
Email: erasi@denisrasilaw.com
DENIS & RASI, PC
38 Corporate Park
Irvine, California 92606

Attorneys for Plaintiffs Ernesto Jimenez, Luis Pimentel,
Jorge Garcia, Miguel Martinez and Agustin Aguilar, appearing
individually and in a representative capacity

Sahag Majarian, II (State Bar No. 146621)
Email: sahagii@aol.com
Law Offices of Sahag Majarian, II
18250 Ventura Blvd.
Tarzana, California 91356

Attorneys for Plaintiff Sergio Galicia Gonzalez, appearing
individually and in a representative capacity

MEMORANDUM IN SUPPORT OF
MOTION FOR MONETARY AWARDS TO
CLASS REPRESENTATIVES, CLASS
COUNSEL AND ADMINISTRATOR - 18