UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 17-00390 JGB (RAOx) | Date | November 19, 2018 |
| Title | *Sergio Galicia Gonzalez v. BMC West, LLC, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Gregg Andrew Farley<br>Paul John Denis<br>Robert W. Skripko, Jr. | Lawrence H. Pockers<br>Angela Hebberd |

**Proceedings:** Order 1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 51) and 2) GRANTING IN PART Plaintiffs' Motion for Monetary Awards to Class Representatives, Class Counsel, and Settlement Administrator (Dkt. No. 52)

Before the Court is Plaintiffs Sergio Galicia Gonzalez, Ernesto Jimenez, Luis Pimentel, Jorge Garcia, Miguel Martinez, and Agustin Aguilar's (collectively, "Plaintiffs," "Named Plaintiffs" or "Class Representatives") Motion for Final Approval of Class Action Settlement ("Final Approval Motion," Dkt. No. 51) and Motion for Monetary Awards to Class Representatives, Class Counsel, and Settlement Administrator ("Awards Motion," Dkt. No. 52). The Court held a hearing on the Motions on November 19, 2018. Upon consideration of the oral arguments and papers filed in support of the Motions, the Court GRANTS the Final Approval Motion and GRANTS IN PART the Awards Motion.

## I. BACKGROUND

On November 29, 2016, Plaintiffs Jimenez, Pimentel, Garcia, and Martinez filed a class action in the San Bernardino County Superior Court. ("Jimenez Action," Case No. EDCV 14-00571 JGB (RAO) Dkt. No. 1-1.) That case was removed to federal court on March 24, 2017. (Case No. EDCV 14-00571 JGB (RAO) Dkt. No. 1.) On January 18, 2018, the Jimenez Action was consolidated with this case for settlement purposes only. (Dkt. No. 30.) On May 8, 2017, Plaintiffs filed an amended class action complaint against Defendant BMC West, LLC ("Defendant" or "BMC"), which contained eight causes of action: (1) violation of Labor Code §§ 226.7(b) and 512(a) for failure to provide legally-compliant meal breaks; (2) violation of Labor

Code §§ 226.7(b) for failure to provide legally-compliant rest breaks; (3) violation of Labor Code § 204 for failure to pay wages for all hours worked; (4) violation of Labor Code § 510 for failure to pay overtime wages; (5) violation of Labor Code § 226(a) for failure to furnish legally-compliant wage statements; (6) violation of Labor Code §§ 201–203 for failure to pay final wages on timely basis after discharge; (7) violation of Business & Professions Code §§ 17200 *et seq*; and (8) representative action under Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq*. ("First Amended Complaint" or "FAC," Dkt. No. 16.)

On April 11, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion," Dkt. No. 36), along with a Memorandum in Support of the motion (Dkt. No. 36-1), a proposed order (Dkt. No. 36-2), and twelve declarations in support of the motion (Dkt. Nos. 36-3–14). Appended to the Declaration of Gregg A. Farley was Exhibit 1, the Joint Stipulation of Class Action Settlement and Release. ("Settlement Agreement" or "Agreement," Dkt. No. 36-3, pp. 24–71.) On May 2, 2018, Defendants filed a Notice of Non-Opposition to the Preliminary Approval Motion. (Dkt. No. 41.) On May 23, 2018, the Court issued an order granting preliminary approval of the class action settlement ("Preliminary Approval Order," Dkt. No. 44) and a minute order granting the motion for class certification and preliminary approval ("Preliminary Approval Minute Order," Dkt. No. 45).

On July 23, 2018, the parties filed a Stipulation to Modify the Notice and Claims Procedure ("First Notice Modification" or "FNM," Dkt. No. 47), which the Court granted ("First Notice Modification Order" or "FNM Order," Dkt. No. 48). On August 30, 2018, the parties again stipulated to modify the notice and claims procedure. ("Second Notice Modification" or "SNM," Dkt. No. 49.) The Court also granted the Second Notice Modification. ("Second Notice Modification Order" or "SNM Order," Dkt. No. 50.)

On October 19, 2018, Plaintiffs filed the Final Approval Motion, accompanied by a Memorandum of Points and Authorities in support of the motion ("Final Approval Memo" or "FAM," Dkt. No. 51-1), a proposed order (Dkt. No. 51-2), and the declarations of Jeremiah Kincannon, Sergio Gonzalez, Ernesto Jimenez, Agustin Aguilar, Miguel Martinez, Luis Pimentel, Jorge Garcia, Gregg A. Farley, Sahag Majarian, II, Robert W. Skripko, Jr., Paul J. Denis, and Ethan E. Rasi (Dkt. Nos. 51-3–14). On the same day, Plaintiffs filed the Awards Motion, along with a Memorandum in Support of the motion. ("Awards Memo," Dkt. No. 52-1.)

Defendant is in the business of manufacturing and selling building materials and construction services. (FAM at 5.) Plaintiffs bring this class action on behalf of themselves and all current and former employees of Defendant who were employed as hourly-paid employees at BMC's California locations at any time from November 29, 2012 through January 17, 2018 ("Class Period"). (Id. at 1.) Plaintiffs' core claims in this action are that (1) "Defendant allegedly failed to pay all minimum, regular and/or overtime wages due Class Members by purportedly paying employees only for their scheduled work hours"; (2) "Defendant allegedly failed to provide legally-compliant meal and rest periods or breaks to Class Members by purportedly failing to provide such breaks or [by providing] them on an untimely basis"; (3) "Defendant allegedly provided inaccurate statements to Class Members each pay period"; and

(4) "Defendant allegedly failed to pay all wages due former employees in the Class at the time of their employment separation." (Id. at 5–6.)

## II. THE SETTLEMENT AGREEMENT

### A. Financial Terms

In the Settlement Agreement, Defendant continues to deny liability for the claims alleged in the FAC. (Settlement Agreement § 2.) Nevertheless, Defendant agrees to pay a total settlement amount of $4,550,000 ("Gross Settlement Amount"). (Settlement Agreement § 5.1.) The cost of attorneys' fees, litigation expenses, incentive payments to class representatives, claims administration costs incurred by the Settlement Administrator, Simpluris, Inc. ("Administrator" or "Simpluris"), the employer's share of payroll taxes, and consideration paid to the Labor Workforce and Development Agency (LWDA) will all be subtracted from the Gross Settlement Amount. (Id. §§ 3.15, 7.3.1.2.)

Plaintiffs request the class representatives each receive an incentive award for $10,000, for a total of $60,000. (Id. § 6.1.) Any portion of the incentive award payment which the Court does not approve will revert to the net settlement amount. (Id.) The Settlement Agreement provides that a maximum of 25% of the Gross Settlement Amount may go towards the attorneys' fees award. (Id. § 7.3.1.2.) The Agreement also provides that Class Counsel may seek a maximum of $30,000 for costs and litigation expenses. (Id.) Defendant agreed not to oppose Class Counsel's motion for an award of attorneys' fees and costs. (Id.) The parties further agreed that Plaintiffs could seek a maximum of $20,000 to settle the PAGA claim, with 75% to be paid to the LWDA and the remaining 25% to be distributed to the Class Members. (Id. § 10.3.) If a class member does not join in the settlement or opts out, the settlement payment he or she would have received will revert to BMC. (Id. § 7.3.2.) However, BMC shall pay no less than 50% of the net settlement amount ("Settlement Floor") to the valid claimants. (Id.) If the total amount to be paid to the class members is less than the Settlement Floor, then the difference between the Settlement Floor and the actual amount paid to the class members shall be distributed to the class members in proportion to the amount they were eligible to receive. (Id.)

In the FAM, Plaintiffs indicate they seek $1,137,500 in attorneys' fees (the maximum of 25% of the Gross Settlement Amount), $22,565.47 for reimbursement of litigation costs, $99,782 in settlement administration fees and costs to the Administrator[1], and $15,000 to the LWDA for its 75% share of the amount allocated to the settlement of PAGA claims. (FAM at 3.) Along with

---

[1] In the July 23, 2018 Order granting the First Notice Modification, the Court preliminarily approved the estimated increase in the Administrator's fees and costs from the original estimated amount of $39,000 to $69,415 for the additional agreed-upon notice process. (¶ 4.) In the August 31, 2018 Order granting the Second Notice Modification, the Court preliminarily approved an additional estimated amount of $24,457.66 for the administrator to undertake further notice to which the parties had stipulated. (¶ 5.)

the $60,000 in incentive payments to the class representatives, these deductions add up to $1,438,959.25, making the net settlement amount $3,111,040.75. (Id. at 4.)

## B. Release

BMC agrees to pay the Gross Settlement Amount in exchange for "fully and finally settling, disposing and resolving the Consolidated Action (including the Jimenez and Gonzalez Actions) and the dismissal of the Consolidated Action (including the Jimenez and Gonzalez Actions) with prejudice, the Class Representatives' and the Settlement Class Members' waiver and release of the Released Claims, and the other terms and conditions set forth in this Joint Stipulation." (Settlement Agreement § 5.2.)

## C. Notice and Claims Process

The parties selected Simpluris, Inc. ("Simpluris") to be the settlement administrator. (Id. § 3.2.) Within fifteen days of the entry of the Preliminary Approval Order, BMC was to provide Simpluris with the contact information for each of the class members and all other information needed for Simpluris to calculate each member's eligible payout. (Id. § 8.3.) Simpluris would then mail the notice to all the class members via first class mail using the most current address available. (Id. § 8.4.1.) For notices that are returned, Simpluris would either send the notice to the provided forwarding address or perform a skip trace to locate a more current address. (Id.) The notice was to state that a Class Member who wishes to object to the Settlement Agreement must submit either a written statement objecting to the Settlement Agreement or a written notice of intention to appear at the final fairness hearing. (Id. § 8.4.2.) The notice shall provide that Class Members who wish to receive a payment must timely submit a valid claim form to Simpluris. (Id. § 8.4.5.)

The First Notice Modification extended the deadline by which Class Members had to return their claim forms by an additional 20 days and provided for re-mailing an updated Reminder and Claim Form, in both English and Spanish, to the Class Members who had not yet responded to the notice packet. (FNM ¶ 5.) The Second Notice Modification extended the claim submission deadline an additional 30 days and authorized the Simpluris to mail an additional reminder postcard. (SNM ¶ 7.)

## D. Performance of the Settlement Agreement

Simpluris provided members of the Settlement Class with notice pursuant to the terms of the Settlement Agreement and First and Second Notice Modifications. On June 22, 2018, Simpluris had the Notice Packets (which included the Notice, Claim Form, and Request for Exclusion Form in English and Spanish) mailed via first class mail to the 9,358 Class Members identified using the information furnished by Defendant. (Kincannon Decl. ¶ 8.) On July 23, 2018, Simpluris had reminder postcards mailed to the 8,960 Class Members who had not yet responded. (Id. ¶ 9.) On August 1, 2018, Simpluris had the updated Reminder and Claim Form mailed to the 8,704 Class Members who had not yet responded. (Id. ¶ 11.) On September 10,

2018, Simpluris had the second reminder postcard sent. (Id. ¶ 12.) Simpluris also undertook efforts to determine the current addresses of Class Members whose packets were returned undelivered. (Id. ¶ 13.) "Simpluris ultimately deemed Notice Packets or Claim Forms to be undeliverable to a total of 375 Class Members, representing approximately 4% . . . of the entire Class." (Id.)

Two individuals contacted Simpluris requesting to be added to the list of Class Members. (Id. ¶ 14.) After Defendant confirmed they belonged to the Class, they were added to the list of Class Members, increasing the total to 9,360. (Id.) Simpluris did not receive any objections to the Settlement. (Id. ¶ 15.) It did, however, receive Request for Exclusion Forms from 32 Class Members. (Id.) Simpluris received valid Claim Forms from a total of 2,456 Class Members. (Id. ¶ 16.)

### E. Administration

Pursuant to the terms of the Settlement Agreement, BMC shall pay the sum of all payments due to Valid Claimants; attorneys' fees, costs, and expenses due to Class Counsel; the payment to the LWDA; Class Representatives' Incentive Payments; and costs and expenses of the Administrator. (Settlement Agreement § 9.1.) The Administrator shall hold the funds in trust until all the conditions of the Agreement are met. (Id.) Within twenty days of the Settlement Agreement Effective Date, and no later than ten days after BMC deposits the Settlement Payments, the Simpluris will mail checks to all Valid Claimants, Class Representatives, Class Counsel, and the LWDA. (Id. § 9.3.) Any payments unclaimed within 180 days of mailing to a Settlement Class Member will be deposited with the California Department of Industrial Relations, Division of Labor Standards Enforcement unclaimed wage fund in the name of the Settlement Class Member. (Id. § 9.4.)

### III. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action

Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

**B. Attorneys' Fees**

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Communs., Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

### IV.   DISCUSSION

**A. Class Action Fairness Act ("CAFA")**

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

On May 2, 2018, Defendant filed a Notice of Providing Notice of Settlement (Dkt. No. 42), averring that, on April 19, 2018, Defendant provided notice to the appropriate state and federal authorities pursuant to 28 U.S.C. § 1715. Accordingly, the Court finds that the notice requirements of 28 U.S.C. § 1715 have been satisfied.

### B. Rule 23(a) and (b) Requirements

In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (Prelim. App. Min. Order at 4-6.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C-08-5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04-2147-PHX-JAT, CV 04-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to Settlement Class Members. (Prelim. App. Order ¶¶ 6–8.) The Court also approved both modifications to the notice and claims procedure providing for additional mailings to potential Settlement Class Members. (FNM Order ¶3; SNM Order ¶ 2.) Simpluris mailed Notice in accordance with the procedures approved by the Court. See supra § II.D. The Court therefore finds that notice to the Settlement Class was adequate.

**D. Fair, Reasonable, and Adequate**

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on November 19, 2018.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

**1. Strength of the Plaintiff's Case**

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, "the bulk of Defendant's potential exposure is for statutory penalties under Section 226(e) and Section 203," both of which contain a *scienter* requirement, under which the Plaintiffs

must show the Defendant acted "knowingly and intentionally" or "willfully," respectively. (FAM at 16.) Thus, Defendant's assertion that it acted in good faith at all times, if believed by a jury, would defeat these claims. Given the difficulty of proving Defendant acted with the requisite intent, the Court finds this factor weighs in favor of approval.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

The risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. Without the Settlement Agreement, the parties would be required to litigate the merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Plaintiffs note that "if Plaintiffs obtained class certification, the Court would still retain authority to de-certify the Consolidated Action in the event the trial showed that common issues did not predominate." (FAM at 17.) However, the Court knows of no reason why there might be an elevated risk of de-certification in this case. Thus, this factor is neutral.

### 4. Amount Offered in Settlement

Class Counsel estimate Defendant's maximum potential liability at $12,388,886. (FAM at 10.) The Gross Settlement Amount, $4.55 million, represents 36.73% of the estimated maximum damages amount. (FAM at 11.) However, **only $1,566,856.80** (34.82% of the Gross Settlement Amount and 12.64% of the total potential liability) **will be paid to Valid Claimants**,[2]

---

[2] The Net Settlement Amount, after deductions for the various fees, costs, and payments described supra § II.A, is $3,111,040.75. (FAM at 4.) Plaintiffs describe the calculation of the "Portion of Net Settlement Amount to Valid Claimants" as follows:

> Dividing the Net Settlement Amount of $3,111,040.75 by the total of 432,006 Work Weeks worked by all 9,360 Class Members during the Class Period results in a figure of $7.20 for the 'Dollars Per Compensable Work Week' to be paid to Valid Claimants for each Work Week. Since . . . the 2,456 Valid Claimants worked a total of 217,619 Work Weeks during the Class Period, it follows that all such Valid

for an average payment of $637.92 to each Valid Claimant and a maximum payment of $1,908 to those who worked the entire Class Period. (FAM at 3–4.) Any payment that would have been made to class members who opted out or failed to provide timely and valid Claim Forms – a total of **$1,544,183.95 – reverts to Defendant**. (See Settlement Agreement § 7.3.2.)

Nonetheless, "[e]ven a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). A recovery of approximately 12–13% of the damages the Settlement Class could have recovered is consistent with amounts routinely found to be fair and reasonable. See, e.g., In re Celera Corp. Sec. Litig., No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving settlement that was approximately thirteen percent of maximum recovery); Deaver v. Compass Bank, No. 13-CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7 percent of the total potential liability). Especially in light of the difficulty of proving the level of intent required by Sections 226(e) and 203, see supra § IV.D.1, the Court finds the amount offered here to be appropriate.

   **5. Extent of Discovery Completed, and the Stage of the Proceedings**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Here, Class Counsel represent that the parties engaged in extensive discovery, including

> (i) initial disclosures under Federal Civil Procedure Rule 26(a)(1); (ii) Defendant's responses to Plaintiff Gonzalez's interrogatories; (iii) Defendant's responses to Plaintiff Gonzalez's document requests; (iv) Defendant's production of over 16,000 pages of employee policy, timekeeping and payroll records; (v) Plaintiffs' records; and (vi) the analysis of those records by Class Counsel's expert consultant.

(FAM at 11.)

Based on these facts, the Court finds discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice § 23.85[2][e] (Matthew Bender 3d ed.). Accordingly, this factor favors settlement.

---

Claimants will receive a total of approximately $1,566,856.80 from the Net Settlement Amount ($7.20 per Week X 217,619 Work Weeks).

(FAM at 3–4.)

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs' Counsel has extensive experience serving as counsel in wage-and-hour class actions in federal and state court. (Farley Decl. ¶ 2; Majarian Decl. ¶ 2; Skripko Decl. ¶ 2; Denis Decl. ¶ 2; Rasi Decl. ¶ 2.) Additionally, Plaintiffs' Counsel demonstrates a realistic and balanced view of the potential outcome of the litigation based on the facts of the case and the relative positions of the parties. As a result, the experience and views of Plaintiffs' Counsel also weigh in favor of preliminary approval.

Another factor courts may consider is whether there was collusion between the parties.

> To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others.

Litty v. Merrill Lynch & Co., No. CV 14-0425 PA (PJWX), 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) (quoting Staton v. Boeing Co., 327 F.3d 938, 961 (9th Cir. 2003)). Here, the high amount of the requested attorneys' fees relative to the amount to be paid to Valid Claimants[3] raises concerns that Class Counsel has put its interests before those of the Class Members. Furthermore, "a reversion clause can be a tipoff that 'class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig), 895 F.3d 597, 612 (9th Cir. 2018) (quoting Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.), 654 F.3d 935, 947 (9th Cir. 2011).

However, the Court notes that settlement negotiations were conducted at arm's-length. "On October 19, 2017, the Parties participated in a full-day mediation before a respected third-party neutral, Jeffrey Krivis, experienced in the settlement of wage and hour class action." (Farley Decl. ¶ 22.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed. Ex. Corp., No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court therefore finds this factor to be neutral.

---

[3] Class Counsel requested $1,137,500 in attorneys' fees, compared to $1,566,856.80 to be paid to Valid Claimants, a ratio of roughly 7:10.

### 7. Presence of a Government Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, Simpluris received no objections and 32 opt-outs. (Kincannon Decl. ¶ 15.) The 32 opt-opts represent a small percentage of the original Class size of 9,360 and a low proportion compared to the 2,456 Class Members who returned Claim Forms. Thus, the Court finds that this factor weighs in favor of approval.

After considering all of the relevant factors, the Court concludes they favor approval. The Court finds that the Settlement Agreement is "fair, reasonable and adequate to all concerned parties." Ficalora v. Lockheed Cal. Co., 751 F.2d 995, 996 (9th Cir. 1985). Therefore, the Court APPROVES the Settlement Agreement.

## E. Attorneys' Fees and Costs

### 1. Attorneys' Fees

Class Counsel also requests approval of its fees. Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar

calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000).[4]  Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations.  Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

Here, Class Counsel requests attorneys' fees equal to twenty-five percent of the Gross Settlement Amount of $4.55 million, i.e., $ 1,137,500.  Counsel notes that the percentage-of-the-fund method yields an amount only 1.20 times higher than its calculated lodestar value of $949,217.50.  However, the Court finds the percentage-of-the-fund method inappropriate in this case considering only 34.82% of the Gross Settlement Amount will be paid to Valid Claimants and 33.94% will be retained by Defendant.  Thus, the Court uses the lodestar method.

Class Counsel estimates it devoted a total of 1,583.55 hours to litigating this case, at hourly rates ranging from $450 to $750, for a combined lodestar of $949,217.50.  (Awards Memo at 12.)  The Court has doubts about the reasonableness of the hourly rates proffered by Class Counsel.  Counsel assert that their hourly rates are "reasonable rates in line with comparable hourly rates charged by other firms that handle complex litigation in the Central District/Los Angeles market."  (Awards Memo at 12.)  However, none of the cases cited in support of this assertion involve wage and hour class actions.  (See id. at 12–13 (citing Kearney v. Hyundai Motor Co., 2013 WL 3287996 at *8 (C.D. Cal. 2013); Parkinson v. Hyundai Motor America, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010); POM Wonderful, LLC v. Purely Juice, Inc., 2008 WL 4351842 at *4 (C.D. Cal. 2008)).)  Rather, they involve complex products liability claims and, in the case of POM Wonderful, 2008 WL 4351842, non-class action false advertising and unfair competition claims.

Plaintiffs also cite the *Laffey* matrix, "an annual matrix of market fee rates for attorneys at various experience levels" in the District of Columbia.  (Awards Memo at 13.)   The Ninth Circuit has noted that, "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away."  Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010).  Further, California District Courts have "declined to [rely on the *Laffey* matrix] for counsel from small firms . . . , which are 'generally awarded fees based on lower rates[.]'"  Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 263 (quoting Lazaro v. Lomarey Inc., No. C-09-02013, 2012 WL 2428272, at *2 (N.D. Cal. June 26, 2012)).  Moreover, Class Counsel fails

---

[4] In Kerr, the Ninth Circuit adopted the 12-factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); this analysis identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

to provide any explanation why Farley, who has six years more experience than Skripko and Majarian, requests an hourly rate $150 and $100 less than theirs, respectively.

After review of other recent orders granting attorneys' fees in wage-and-hour class actions, the Court finds a maximum of $600 per hour to be appropriate. See Scott v. HSS Inc., No. 814CV01911JLSRNB, 2017 WL 7049524, at *7 (C.D. Cal. Dec. 18, 2017) (approving a maximum hourly rate of $600 where one of the attorneys had 20 years of litigation experience); Ruiz v. JCP Logistics, Inc., No. SACV131908JLSANX, 2016 WL 6156212, at *9 (C.D. Cal. Aug. 12, 2016) (approving a maximum hourly rate of $600 for Farley and Majarian); Luna v. Universal City Studios, LLC, No. CV 12-9286 PSG (SSX), 2016 WL 10646310, at *8 (C.D. Cal. Sept. 13, 2016) (approving an hourly rate of $625 for a partner with nearly twenty-five years of experience). Thus, the Court makes the following adjustments to the requested hourly rates:

| Attorney | Experience | Requested Hourly Rate | Approved Hourly Rate |
|---|---|---|---|
| Robert Skripko | 28 years | $750 | $600 |
| Ethan Rasi | 5 years | $450 | $350 |
| Paul Denis | 8 years | $525 | $425 |
| Gregg A. Farley | 34 years | $600 | $600 |
| Sahag Majarian, II | 28 years | $700 | $600 |

The Court also has concerns regarding the number of hours billed. Specifically, Skripko, Majarian, and Farley, who each have more than twenty-five years of experience and bill at high hourly rates, billed tasks that could have been delegated to less experienced attorneys or support staff. For example, Skripko billed $300 for 0.4 hours spent filing the First Amended Complaint (Skripko Decl., Ex. A at 3) and $75 for 0.1 hours preparing the Civil Case Cover Sheet (id. at 4). Majarian billed for client intake and drafting a letter to a client. (Majarian Decl., Ex. A at 1). Farley billed for tasks such as preparing summonses and civil cover sheets; supervising mailing, service, and filing (Farley Decl., Ex. A at 2); drafting letters to clients (id. at 3); obtaining signatures; and preparing PDFs (id. at 20). Moreover, Farley's use of block billing makes it difficult to determine how much time was spent on such mundane tasks and how much was spent on substantive legal work. For example, Farley billed $2,100 for 3.50 hours spent obtaining signatures, e-mailing co-counsel, preparing PDFs, and e-mailing defense counsel regarding compliance with CAFA requirements. (Id.) In light of the above, the Court reduces Skripko, Majarian, and Farley's hours billed by ten percent.

The Court therefore makes the following adjustments to Class Counsel's calculation of the lodestar value of their services:

<pre>
Robert Skripko      $750 600 per hr. X 458.40 412.56 hrs. =    $343,800.00 247,536.00
Ethan Rasi          $450 300 per hr. X 303.10 hrs. =           $136,395.00  90,930.00
Paul Denis          $525 425 per hr. X 372.50 hrs. =           $195,562.50 158,312.50
Gregg A. Farley     $600 per hr. X 412.25 371.03 hrs. =        $247,350.00 222,618.00
Sahag Majarian, II  $700 600 per hr. X 37.30 33.57 hrs. =      $26,110.00   20,142.00
</pre>

                                                          TOTAL =      $~~949,217.50~~   739,538.50

Accordingly, the Court awards $739,538.50 in attorneys' fees.

    2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel seeks $22,565.41 in costs. (Awards Memo at 2.) Class Counsel provides an itemized breakdown of the expenses in this case, which include filing fees, service of process, postage, parking, photocopies, expert consultant fees, teleconferencing fees, and mediation costs. (Skripko Decl., Ex. A at 71; Farley Decl., Ex. A at 27–28; Rasi Decl., Ex. A; Denis Decl., Ex. A; Majarian Decl., Ex. A at 3.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement).

Denis and Rasi each included thirty hours of administrative support at an hourly rate of $15.00 in their lists of costs incurred. (Rasi Decl., Ex. A; Denis Decl., Ex. A.) However, "clerical or ministerial tasks . . . are properly considered part of an attorney's overhead and are reflected in his or her hourly rate." Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *32 (C.D. Cal. Nov. 23, 2013). Skripko also lists $178.40 for "Website," but provides no explanation of what purpose the website served. The Court therefore approves the requested amount of costs minus the amounts billed for administrative support and the website, for a total of $21,487.01.

F. Incentive Award

Plaintiffs seek incentive payments of $10,000 to each named Plaintiff for their services to the class. The trial court has discretion to award incentives to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In undertaking this lawsuit, Named Plaintiffs have put their ability to secure future employment at risk. As Plaintiffs note in the Awards Memo, "by lending their names to this Consolidated Action, Plaintiffs have subjected themselves to possible adverse consequences in seeking future employment" as potential employers may become aware of their participation in this action and, as a result, decline to hire Plaintiffs. (Awards Memo at 15.) Plaintiffs participated in the case by meeting with class counsel in person and by phone, assisting with the preparation of legal papers, responding to requests for information, producing information and documents, and attending a full day mediation. (Martinez Decl. ¶ 6; Aguilar Decl. ¶ 6; Jimenez Decl. ¶ 6; Gonzalez Decl. ¶ 6; Garcia ¶ 6; Pimentel ¶ 6.) Miguel Martinez and Agustin Aguilar each expended more than twenty-five hours on the case (Martinez Decl. ¶ 6; Aguilar Decl. ¶ 6), while Ernesto Jimenez spent more than forty-five hours (Jimenez Decl. ¶ 6), Sergio Galicia Gonzalez spent more than twenty hours (Gonzalez Decl. ¶ 6), Jorge Garcia spent more than thirty hours (Garcia Decl. ¶ 6), and Luis Pimentel spent more than forty hours (Pimentel Decl. ¶ 6). Further, Plaintiffs have agreed to a general release of claims against Defendant which is much broader than the release by other Settlement Class Members. (Martinez Decl. ¶ 6; Aguilar Decl. ¶ 6; Jimenez Decl. ¶ 6; Gonzalez Decl. ¶ 6; Garcia ¶ 6; Pimentel ¶ 6.)

Based on the above, the Court finds that an incentive award is appropriate. Accordingly, the Court approves incentive awards of $10,000 per named plaintiff.

### G. Administration Costs and Expenses

Plaintiffs also request approval of $99,782 in settlement administration costs. (Awards Memo at 16.) In support of this request, Plaintiffs provide the declaration of Jeremiah Kincannon, a Senior Project Manager with Simpluris, outlining Simpluris' efforts to provide notice to Class Members. (Kincannon Decl. ¶¶ 4–13.) Considering the number of class members and Simpluris' thoroughness in trying to reach them, and in light of this Court's approval of the two Notice Modifications (see FNM Order and SNM Order), the Court concludes that the administration costs and expenses are reasonable.

## V. CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS final settlement approval;
(2) GRANTS IN PART the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $739,538.50 from the gross settlement amount;
(3) GRANTS IN PART the request for costs and AWARDS Class Counsel costs in the amount of $21,487.01 from the gross settlement amount;
(4) GRANTS the request for settlement administration fees and AWARDS Simpluris, Inc., administration fees in the amount of $99,782 from the gross settlement amount;
(5) GRANTS the requests for service awards and AWARDS a total of $60,000 to the Class Representatives from the gross settlement amount, consisting of $10,000 to each of the six Class Representatives;

(6) DISMISSES the First Amended Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**